KENNERLY ᴇᴛ ᴀʟ. vs. SHEPLEY.

1. In the prosecution and defense of claims, the executor or administrator is deemed a full representative of the creditors of the estates respectively committed to their care.   When the object of the suit is to restrain the administrator from selling property to pay debts of a deceased person, and to set up a lost deed, it is sufficient to bring before the court the administrator and the heirs, who fully represent the property, and are liable for all demands upon it.

2. The allowance of a claim against a deceased person's estate, is a judgment, and will be respected as such; but there is some difficulty in maintaining that those allowances are liens upon the estate.   The administrator has no interest in the real estate to which a lien could attach itself by reason of a judgment against him.

3. It is no objection to a sale made by a marshal of the United States, that it was not made in

conformity to the law of this, regulating sales under process of execution. The State laws as such, are not binding u on the offi:e:s of the federal government.

## ERROR to St. Louis Circuit Court—Ch'y.

### STATEMENT OF THE CASE.

Jno. R. Shepley, on the 29th of October 1817, brought his bill in chancery, in the circuit court of St. Louis county. (which was once or twice altered by amendment and the addition of supernumerary matter, done by leave of court,) against Elisha M. Kennerly, deceased, widow and administratrix of James Kennerly deceased, and the heirs of said Kennerly.

The bill states, in substance, that in 1823, in the U. S. District Court for the Missouri District, two judgments were rendered against James and George H. Kennerly, the one in favor of Conryger & Prusehouse, and the other in favor of William Linn. That in 1825, executions were issued on said judgment, and levied upon the lot of ground now in question. And that on the sixth day of September 1825, the marshal, acting under said executions, sold said lot of ground to John O'Fallon, "all of which," says the bill, "was done in due form of law."

That the marshal did, on the 9th of September 1825, proceed to execute a deed for the premises, to John O'Fallon, the purchaser, and on the 14th of September, did acknowledge the deed in the U. S. District Court, which acknowledgment is entered of record in said court. That on or about the same day, the marshal delivered the deed to O'Fallon, who paid the consideration money, without stating how much, and who kept the deed for some time; and that the deed passed to and vested in O'Fallon, the interest of Kennerly in the lot.

That on the 23d of May, 1836, O'Fallon, by deed of that date, conveyed the lot to Charles R. Anderson, who afterwards conveyed it to Wm. C. Anderson; who mortgaged it to the Commercial Bank of Cincinnati; who foreclosed the mortgage by regular suit, and under their judgment, bought in the land and conveyed it to trustees of their own; and that said trustees, on the 1st. of July 1817, by deed of that date, conveyed the same to the plaintiff. "By which conveyances, says the bill, the title in fee simple was vested in" the plaintiff.

That the said conveyances were made for valuable considerations; that the premises, ever since the execution of the deed to O'Fallon, have been in the uninterrupted possession of the plaintiff, and those under whom he claims, and that he still has possession.

That the deed to O'Fallon (of 9th Sept. 1825) has never been recorded and cannot be, because it is lost, or has come to the possession of the defendants, or some of them, and is cancelled or suppressed, as plaintiff believes.

That at the date of the judgment of Conryger and Prusehouse, and of Linn against Kennerly, he, Kennerly, was utterly insolvent, and so continued till his death, and his estate is insolvent.

That the sale from O'Fallon to C. R. Anderson was made with the knowledge and consent of Kennerly, and was, in effect, a sale by him, as he received the whole or the greater part of the purchase money.

That Kennerly has since died, leaving the defendants, his widow and children, one of the children being a minor.

That in consequence of the loss of the deed, he is destitute of the proper evidence of title, and his rightful ownership of the property is put in jeoperdy, with reasons to show how it may be put in jeoperdy.

That letters of administration were granted to Mrs. Kennerly the defendant, on the 12th of October 1841.

That the administratrix, knowing that the deed from the marshal to O'Fallon was not recorded, "obtained from the probate court an order of sale of said premises, as still belorging to the estate of James Kennerly deceased," without stating when, how or for what purpose such order

was made, and without producing or referring to the record, thereof, and has proceeded to advertise the same for sale, exhibiting a copy of the advertisement.

The bill prays an injunction, to restrain sale under the order of probate court, and to prevent the making of any deed, by the parties, that might affect the property; and the injunction was granted.

The first bill was demurred to, and the demurrer sustained. The amended bill was demurred to, and, an agreement, by altering a date and filing record of foreclosure of mortgage deed of Anderson to the Commercial Bank, leave was given plaintiff to amend again, and upon the coming in of the answer of the defendants, leave was given to plaintiff to amend again, which was afterwards done, in substance.

That before the judgment, and sale thereunder, by the marshal to O'Fallon, James Kennerly owned the lot in fee simple; and Mr. Kennerly had no interest therein, by the Spanish law, or any law in force at the time; and that Kennerly acquired title to the lot 12th of November, 1818,

That the marshal's deed to O'Fallon is lost, and cannot be found, after diligent search. That if O'Fallon ever made a deed of the lot in question, to Mrs Kennerly, as stated by her and by Taylor and wife, defendants, it was made without consideration, and not delivered to any person with intent to pass the title.

That the deed to C. R. Anderson was made for a valuable consideration, which is stated on the face of the deed; which was duly paid to Anderson; and that Anderson had no notice of the conveyance to Mrs. Kennerly, and that neither the plaintiff nor the others through whom he claims, had knowledge or notice of it. That he never heard of it till since this suit was brought; and so denies the validity of it, and alleges that it is void under the statute.

Answers were filed by all the defendants; one of them being an infant, answered by guardian, ad litem, appointed on motion of the plaintiff; and one, a married woman, Mrs. Taylor, answered with her husband. The answers of the heirs are not very important, and need not be specially stated here.

Mrs. Kennerly, as widow and administratrix, filed two answers. The first, to the amended bill, in substance, that she is a widow and entitled to dower in Kennerly's estate, after payment of debts; believes, from information, that her husband never had an interest in the lot, but does not know that he was ever divested of title. He said that he got title of it in 1817, and that she as his widow, has right, by community to one half; that she has never released her right, and claims to be protected in it. Does not admit the judgment mentioned in the bill, nor the proceedings under them, nor the deed to O'Fallon; knows nothing of the deed or its loss, and demands strict proofs of all those facts, and of the legality and regularity of them.

That the plaintiff had not used due diligence; and denies his right to set up the supposed lost deed, without strict proof of its execution and contents.

Admits the insolvency of James Kennerly, and that much of his property was sold and sacrificed; but she has no recollection of the sale of the lot in question. Has heard that the lot in question was, through the agency of some of her friends, bid in, in the name of Col. O'Fallon, at the nominal price of $10, for the purpose of having it conveyed to her or her children, and that said O'Fallon did, soon afterwards, execute a deed of said lot to her, in due form, and deliver the same, for her, to James Kennerly, her husband. She did not know, personally, of the deed, but has never relinquished any right she may have under it; and claims to be protected.

Have never seen the alleged deed from the Marshal to O'Fallon, and denies the destruction or suppression of it by herself, or any one with her knowledge.

Alleges an objection to the advertisement of the marshal's rule, and insists that it is sufficient to invalidate his sale.

Does not admit the fact or legality of the mesne conveyances alleged in the bill.

Does not admit the possession of the lot, as stated in the bill, and requires proof. Admits nothing but what is expressly admitted, and waives no right of dower, or other rights in the premises in question

Admits, that at the instance of persons acting for the creditors of James Kennerly deceased, he did take measures to have all the right, title, claim and interest of James Kennerly deceased,

in and to the premises in controversy, sold, to pay the debts of said deceased; and obtained an order of sale from the probate court of St. Louis county, and had advertised the same for sale, when she was prevented from proceeding further, by the injunction granted in this cause; and as complainant has failed to make said creditors parties to this suit, she submits to the court that their interests should be sedulously granted, in the proceedings and determination of this cause.

The answer claims the protection of the court, for herself and the heirs and creditors of James Kennerly deceased, and denies the right of plaintiff to recover in this cause, even if all the statements of the bill were true.

The amended answer of Mrs. Kennerly states, in substance, that James Kennerly, at the time of his death, was deeply indebted and insolvent. That various claims were exhibited and allowed against his estate, to the amount of $6,690 50, giving the names of the principal creditors. That the allowances were all made in the year 1841 and 1842; and that payments have been made to the amount of $747 97, out of the assets of the estate; and that the remainder with interest is still due.

That in discharge of her duty, as administratrix, she did, on the 26th day of June, 1847, file her petition for the sale of the real estate, describing the manner of proceeding, and that, on the 10th of September, 1847, an order was made by the probate court, directing the said administratrix to sell the real estate of said Kennerly, being the lot in question in this suit, for the purpose of paying the debts of said Kennerly; that under said order she was about to sell, and would have sold said lot, but that she was stopped by the injunction in this case.

She claims that the order of sale was a judicial proceeding, with the force and effect of a judgment, which appropriated the property to the payment of debts, and ought not to be set aside in favor of such claim as the plaintiff's. And she files with her answer a certified copy of the record of the probate court.

There were replications to the answers.

A good deal of testimony was given on both sides, which is all noted in the bill of exceptions. It is too voluminous to be inserted here, at large, and as parties might not agree upon results and conclusions to be drawn from it, we refer to the bill of exceptions and the documents agreed to be read.

Upon the whole case, the Court decreed, that all the title of James Kennerly, at the date of the judgments under which the Marshal's sale was had, (Feb. 7, 1823) and all the title of the defendants, and each of them, be vested in Shipley, in fee simple. And that the administratrix be enjoined perpetually from selling the land, under the said order, or any other order of the Probate court, with a judgment for costs and award of execution.

The defendants moved for a re-hearing, and filed reasons in writing, which are in the record. The court overruled the motion.

The defendants excepted and bring the case here by writ of error.

## BATES for Plaintiff in error.

1. The bill itself is defective, and insufficient to warrant such a decree as this, if all its statements were admitted to be true, in manner and form, as stated.

And under this general point,

First, every bill in equity should state such facts and circumstances, being true, as necessarily lead to a decree for the plaintiff. It should state, not the truth only, but the whole truth, of all that is material to the object of the bill, or to a just decree in the case.

But this bill, speaking of the order of sale prayed to be enjoined, states only that the widow and admr'x. of Kennerly "had obtained an order of the St. Louis probate court, to sell the said lot"—Whereas, if the whole truth had been told about that order of sale, it would have appeared, that the sale was ordered in due course of law, to pay the judgment, creditors of the deceased.

Besides this suppression of material facts, this short statement (deemed sufficiently im-

portant to be copied into the decree) contains the suggestion of a false idea, in the allegation that the widow and administratrix obtained the order. Thus holding out the idea that the order of sa'e, so defectively stated, might be for the benefit of the widow as such. Second, (under the first point,) the creditors for whose interest the sale was about to be made, ought to have been defendan's to the bill; for the object of the bill was to defend their claims to the land: Story's Equity Pleadings sec 81, &c.

The plaintiff knew of the existence of the creditors, for he stated in his bill the order of sale, and was bound to know the whole record, of which that order was the end.

II. The allowances of the probate cour', in favor of the creditors of the deceased, were judgments; and 'he creditors were entitled to all the legal and beneficial effects of such judgment.

That they are legal judgments is well settled by the decisions of this court; 6 Mo. Rep. 501, McKenners vs. Davis; 7 Mo. Rep. 469, Gamble vs. Hamilton.

III. Those judgments were upon the lands of the deceased; the order of sale was an execution, is-ued on those judgments, designating the land to be sold, and thus stronger and more conclusive than a com' law writ of *fieri facias*. And the advertisement of the sale was a levy, according to our common practice under executions.

IV. If the plaintiff had a perfect conveyance of the land, from Kennerly or the Marshal, the same being unrecorded, at the date of the judgment allowances, his title must yield to that of the creditors. It would be so on a mere lien: 7 Mo Rep., Jones vs. Luck, 8 Mo. Rep., Hill vs. Paul; 9 Mo. Rep,, Reed vs, Austin. But this is a case stronger than a mere lien. It is a specified appropriation.

V. Those judgment creditors had a perfect legal right to have the land sold to pay their record debts- f r the land stood of re ord, in the name of James Kennerly, their debtor. And the equitable right to have the land for their money, was at best, as good as hers. Shepley can set up to have the land for his money. They are not charged or chargeable with notice of any defect in, or incumbrance upon the title. But he is charg able with knowledge of the creditors and their rights. And with that knowledge he purchased a supposed equity, against the known law; for he knew when he purchased, that he had no deed of record, and now it appears, that he had no deed at all.

VI. The administratrix, though not representing the persons of the creditors, represented their rights in the matter of selling the land; and in proceeding to sell, ac ed solely for their benefit: so that the annulling of those proceedings is the absolute deprivation of their legal and equitable right, ascertained and adjudged, of record by a court of competent jurisdiction

VII. The bill takes no notice of the creditors of James Kennerly, but sues his hei s, and his widow in her individual right, and as adm'rx. and charges upon them notice of the Marshal's deed to O'Fallon, and insinuates the suppression of the deed.

The heirs deny all n tice. and Mrs. Kennerly denies all knowledge of the deed, but ad mi s that she heard of the sale to O'Fallon, and states that she h ard at the time that the purchase was made by O'Fallon for the use of her and her children. And these answers sta d as true, for they are not contradicted.

VIII The Marshal's sale (if it had been perfected by a d ed duly acknowledged and recorde<sup></sup>,) was irregular and illegal. It was not m de acco ding to the laws of Missouri, in force at the time: Rev C. 1825, p. 220, and ps. 368-9, sec. 10, 20, 21.

The Marshal's sale of this land was made under a power, merely legal and even courts of equi'y, which sometimes grant relief against the defective executi n of private powers, will not relieve again t the defective execution of a legal power: 1 Story's Rep. 478, Bright vs. bovd.

ut courts of law are inexorable in requiring the literal performance of a'l statutory prerequisites: Sugdon on Powers, 209 10-15 and 549; 3 East Rep. 410, 440; 10 East R. 158; 8 Mo. Rep., 345; Cook et al. vs. Peebly; 9 M . Rep., 878, Reed vs· Morton 4 Hill (N. Y.) R., 76, 92.

The sale was not made according to any law of the United States. The process act of 1792, did not apply to the court established in the new States, created after the date of the act: 10 Wheat. R. 1, (5 Cond. R., 1:) Wayman vs. Southard; Ib. 51, (6 Cond. R., 22;) U. S. Bank vs. Holsted.

It was not according to any rule of Court; there was no rule on the subject, although the Court had statutory power to make rules to govern sales, and such rules were the more necessary, because Congress did not pass a process act for the courts in Missouri, till 1828.

There was no settled practice or old usage, to give apparent sanction to such a sale; for the District Court was in its infancy, and had no settled practice.

It is not like the case in I Pet. R., 6J°, Fetlerton et al. vs. U. S. Bank, for there the circuit court had long practiced according to the State Statutes, and the written rule of the district court.

. So strict is this court, in the matter of conveyances, that it does not allow the most formally written paper to operate a conveyance, unless it be signed, sealed and delivered. Nothing short of a deed can convey lands, in this State, no matter how plainly an unsealed instrument may express the will of the parties: 7 Mo. Rep. 355, McCabe vs. Hunter; Ib. 387, Moss vs. Anderson.

IX. The Marshal's deed to O'Fallon, as set up in the bill and attempted to be proved, is entirely defective.

1 The deed was required by law to be recorded, with its certificate of acknowledgment, and not being recorded was not valid, except between the parties thereof, and such as had actual notice thereto: R. C. 1825, p. 221, section 14; Reeds vs. Morton, 9 Mo. Rep. 878.

2. There was no due diligence in searching for the deed. Mr. Shepley's enquiries were made too late C. R. Anderson's were also too late, and not sufficiently extensive when made. If Anderson had enquired for the deed when he bought the land, he could have gotten it, for then (according to O'Fallon's testimony) it was in Kennerly's hands. He cancelled the deed to his wife and left it so. But we are left to co jecture what become of the deed to O Fallon: See the testimony of Shepley, C. R. Anderson and O'Fallon.

3 If one proof be at all allowable in such a case, the existence of the deed, and its substance ought to be proved so plainly as to give to the opposing party the same grounds of objection that he would have to the deed and its authentication, if produced. Otherwise, a purchaser, with a doubtful or defective deed, would always do well to leave it. Here, the proof of the contents of the deed is very vague, and no proof at all of the existence of a certificate.

4. There being no proof of a certificate of acknowledgment, the minutes of the district court were given in evidence, to show that there had been an acknowledgment, in fact, of a deed to O'Fallon, This, if admissible at all, tends only to prove the existence of a deed, not the authentication of any particular deed.

The federal court was not the proper tribunal to take the acknowledgment: R. C. 1825, p. 208, p. 369, sects. 20 and 21 But if it were, the legal proof of acknowledgment is the prescribed certificate, and not the memorandum contained in the minutes of the court.

5. Although the federal courts have power, by judgment and execution, to sell the lands of debtors, still it belongs to the State laws to determine how conveyances shall be made, and how deeds for bonds shall be executed, authenticated and recorded: 10 Wheaton R. 192 (6 Cond R 71 ) McCormick vs. Su lry nt, 9 Wheat. R. 565, Kerr vs. Mason, 7 Cranch 115 U. S vs. Crosby.

If the federal courts can control mesne conveyances of land, they may also settle the manner and effect of such conveyances and the modes and proof and registry, which no one will contend for.

X. As to the possession of the land in dispute, the testimony does not show any such possession in the complainant and those under whom he claims, as is alleged in the bill. It does not show that possession accompanied and followed the deed, nor that O'Fallon ever had possession

In sales between individuals, the possession is presumed to accompany the title; and a va-

cant possession is attributed to the purchaser. But not so with officers who sell under execution. They never have possession, and therefore never transfer it. Such a purchaser must recover, if at all, on the mere strength of his title.

Thus far, in the belief that there is no transfer by the marshal, valid and sufficient to convey to O'Fallon James Kennerly's right to the land in question; but if there be such transfer, it is still claimed that the complainant has no right.

XI. The deed from O'Fallon to Mr. Kennerly was a good deed, well executed to convey O'Fallon's title; and the cancellation and suppression thereof was a mere wrong, that could not take away her vested right.

SPALDING & SHEPLEY, for respondent.

I. The sale and marshal's deed to O'Fallon upon judgment and execution, in the district court of Missouri vested the title in O'Fallon: 1 United States Stats. at large, 79, 81 act of September 24th, 1789, section 14 authorizes all the courts to issue writs necessary to their jurisdiction, &c., and comprehends district courts.

Ibid., page 93 act September 24th, 1789, that forms of writs and modes of process, &c., in circuit and district courts, shall be the same as then used in supreme courts of the States.

This act is perpetuated by act of May 8th, 1792, in same volume, page 275, which gives courts the power to alter forms, &c., as deemed expedient. Ibid., page 333 act of March 2d, 1793, sections 7 and 8, give power to regulate the practice and make rules, &c.

3d vol. U. S. Stats. 653, act of March 16th, 1822, establishing district courts in Missouri, giving the jurisdiction conferred on the judge of the Kentucky district by act above cited, at 1st vol. p. 79 and 333, and acts supplementary.

4th vol. U. S. Stats. p 444, district court of Missouri, same as circuit court, passed 19th February, 1831.

4th vol. U. S. Stats. p. 248, is an act passed 19th May, 1828, regulating process and proceedings and authorizing courts to do it by rule, &c. (This is after the sale to O'Fallon.)

10 Wheaton 1: The 24th section of the judiciary act of 1789, authorizes courts to issue writs of execution.

10 Wheaton 57: Courts of the U. States can, &c., alter their process as to sell lands, &c. on execution when not subject to the State laws; 1 Peters 604, Fulton vs. Bank of U. States. Ohio was not admitted into the Union till 1802; and that the act of 8th May, 1792, could have no operation in that State; also, that a practice or mode of proceeding could be introduced by usage, without written rules.

All the proceedings on the execution, are proceedings in the suit, and which are by the act of Congress put under the regulation and control of the court out of which the execution issues. This suit does not terminate with the judgment. These points are expressly decided in the case in 10 Wheaton, page 641.

The decision of the supreme court of Missouri, in the case of Evans & Riche vs. Labadie, 10 Mo. Rep. 425, does not apply to the present case; as that case was governed by the act of Congress of May 19th, 1828, which act was passed after the marshal's sale to O'Fallon.

The record shows, that many marshal's sales of land were made in 1825 and before, and that they were made according to usage in as near conformity as possible with the State law, and that there was no written rule regulating them; and that the sale and proceedings in question were like all the others. In other words, the proceedings and sale and deed, in this case, were according to the unwritten rule of the court.

If this rule is not valid, then none made by the marshal in those days can stand.

II. This is a case of equitable jurisdiction. A deed has been lost or suppressed by parties interested, and a purchaser for value, applies to have this law remedied; and his property protected against those who might deprive him of it, by taking advantage of the absence of the marshal's deed from the land records of the country.

Kennerly et al. vs. Shepley.

1 Story's *Equity section 79, 80*—*court relieves,* in case of lost instruments when there is not adequate remedy at law. Ibid, *section 81,* in case of lost bonds and instruments under seal. Ibid, *section 84,* when there are lost or destroyed deeds of land, equity interferes. Ibid, *section 88,* equity will exercise jurisdiction, notwithstanding there may be full proof at law of loss and contents of deed, &c. Ibid, *section 252,* chancery has jurisdiction of fraudulent *suppression or destruction of deeds;* and *section 254, where the contents of suppressed or destroyed instrument is proved,* party will receive some benefit as if it were produced.

III. The *widow and heirs acquired no rights by the failure to record the marshal's deed.* They are mere volunteers. The law devolves on them what their ancestors left, not what he had alienated They succeed simply to his rights and stand in his shoes; and the acts respecting the recording of deeds, works no forfeiture in their favor, because this deed is lost and not recorded: Rev. Code of 1835, page 123, sections 30, 31, 32; Rev. Code 1825, page 218 section 8, and page 221 section 14; Rev. Code 1845, page —— section 41.

From the phraseology, as well as from the object and policy of these acts, it is apparent that the penalty for not recording deeds, was intended in favor of subsequent purchasers, and mortgagees, and also judgment creditors, their loss being within the reason of the act, as this court has heretofore held, because by statute the judgment attaches upon the land like a mortgage.

11 Mo. Rep. 77—here the court hold that the object of the act is to make unrecorded deeds void, as to all subsequently acquiring an interest, who would be injured by the failure to record it.

This is the true doctrine. To avoid the deed, the party must, first, have acquired an interest, legally by deed, or judgment having a lien; second, must have acquired such interest before the deed is recorded, and before actual notice of it; third, must be in such a position as to be injured by the failure to record the deed.

What is said in relation to judgments, is not now pertenant, as this court, at the March term, 1851, held that judgments do not bind land previously conveyed by an unrecorded deed.

IV. Neither do the creditors whose claims were allowed in the probate court, against the estate of James Kennerly, come within the protection of the act respecting the recording of deeds.

1. They have acquired no interest in, nor lien on the land. No statute makes such a judgment a lien. It is no more of a lien than the debt itself, for the whole estate is bound for debts. If, therefore, there is any lien at all, the debt is the lien.

2. Nor is the order to sell, a lien. It is a mere *authority to exercise a power,* but gives no interest in land, and has no binding force, more than any other power of attorney. It is a mere proceeding to sell, and converts into money the effects of the estate.

3. The sole question is, does the land belong to the estate? If it does, it cannot be alienated by the allowances or judgments in the probate court.

4. The land does not belong to the estate simply because the deed of the intestate, alienating it, is unrecorded. The failure to record it does not make the land conveyed by it belong to the heirs or to the estate. If there be any lien, it is on the estate, not on what does not belong to the estate.

5. If administration sale of land is made, it is only the right of the deceased that is conveyed, and the deed purports to convey that only: Rev. Code 1845, article 3 of administration law, sections 34 and 35.

6 The creditors, whose accounts are allowed, are not in a position to be injured by the failure to record the deed, within the meaning of the acts. They can only share in the estate in what the intestate left, belonging to him.

7. If the intestate had been true-tee--had property vested in him belonging to others, his creditors could not get it on his death. The *cestui que* trust, on proving his case, would recover the property, notwithstanding creditors might have got their demands allowed.

8 It is not true, that as soon as a man dies, that the law brings into his estate and makes a part of it, all lands sold by him, the deeds of which happened to remain unrecorded.

V. If the deed first made by O'Fallon to Mrs. Kennerly, was, in fact, ever delivered to her, yet, as neither plaintiff nor any of the persons through whom he claims by mesne conveyances, had any notice of that deed, and it never was recorded, it cannot bar the plaintiff's right. All deny knowledge or notice of this deed.

VI. Proper parties were to the suit, and the creditors are not to be parties: Story's Equity pleadings, secs. 140, 142 and 150.

The executor or administrator is also here, the representative of all concerned in the real estate, so far as the same is liable for debts of the deceased. He receives the proceeds of the sale and administers them.

But the case cannot turn on the defeat of parties. The demurrer should have been abided by and taken up on that decision. That point does not arise here.

The parties, all, through whom the titles came from O'Fallon down to the complainant, inclusive of the latter, deny, on oath, that they ever saw said marshal's deed, and have not got it, and know not where it is.

Shepley, when he bought, did not know that the lot would be set up for sale, by the administratrix. He did not know that the creditors would claim it as a part of the estate of Kennerly.

Kennerly assents to the sale to Capt. R. Anderson. He drew the deed to him and received the consideration from Anderson, he having received the marshal's deed from O'Fallon. Why he kept it as he did, and did not record it, does not appear; and what has become of it, unless some of his heirs or his widow have made way with it.

SCOTT, J., delivered the opinion of the court.

The objection, that the creditors were not made parties to the suit, cannot be maintained. In the prosecution and defense of claims, the executor or administrator is deemed a full representative of the creditors of the estates respectively committed to their care. The object of the suit, being, to restrain the administrator from selling property to pay debts of a deceased person, and to set up a lost deed, it was sufficient to bring before the court the administratrix and the heirs, who fully represented the property, and are liable for all demands upon it: Story's Equity Pleadings sec. 150; Mitford 166.

The allowance of a claim against a deceased person's estate, is a judgment and will be respected as such. But there is some difficulty in maintaining that those allowances are heirs upon the estate. Formerly, when an execution could issue on a judgment in the circuit court against an administrator, it was held, that such judgment was no lien upon the estate of the decedent, in his hands. If there was no lien, when the lands could be sold under execution, it would be hard to maintain that a lien is created by the allowance of a demand in the county court. No argument will be made here on the subject, but a reference to the case of Prewitt vs. Jewell, 9 Mo. Rep. 732, will show what has been said on that subject. The administrator has no interest

in the real estate to which a lien could attach itself by reason of a judgment against him, In the theory of our law, lands, upon the death of the ancestor, descended to his heirs, and there is a contingent power in the administrator, to sell the lands to pay the debts, with a right to lease and preserve them until distribution is made. The administrator and heirs succeed only to the interest of the deceased. They can obtain no greater right than he had. The administrator and heirs, coming in as volunteers, the unrecorded deed was binding on them. The land was gone at the death of Kennerly. The power of affecting it, in any way to the prejudice of the unrecorded deed, was extinguished. It should not have been inventoried, or regarded as a part of the estate of the deceased. The creditors having no interest in the lot, at the death of the intestate, and on his death the unrecorded deed being binding on the representatives, it was impossible that any right to the lot could accrue to them, which would subject it to the claim of creditors. If the lands should be sold by the administrator, he could only convey the right Kennerly had at the time of his death, and as to Kennerly, there was no right.

Considering the length of time from the execution and delivery of the Marshal's deed, the evidence of its contents is sufficient. The formal parts of the deed were printed, and we are informed by the testimony, that the Marshal's deed was used in drawing a subsequent deed for the same lot, and moreover, that the court took the acknowledgment of the same.

It is objected, that the sale of the lot, made by the Marshal, was not in pursuance to the laws of Missouri, in force at that time. The act of Congress, of the 16th of March, 1822, established a District Court for the District of Missouri. That act conferred on said court the jurisdiction and powers which by law were given to the judge of the Kentucky District, under the act of September 24th, 1789, and the act of 2d March, 1793, and the acts supplementary thereto. The 7th section of the act of 2d March, 1793, gives power to the courts of the United States to make rules and orders for their respective courts, directing the returns of writs of process, and to regulate the practice of the courts respectively. It is conceded, that neither the act regulating process in the courts of the United States, of the 29th September, 1789, nor the act of 8th of May, 1792, empowering the courts to make such alterations and additions to the forms of writs, executions and other processes they may deem expedient, were not in force in this State; those acts being confined in their operation to the States of the Union, in existence at the time of their passage. The sale, in this case

having been made prior to the act of Congress of the 19th May, 1828, adopting the practice of the State courts, for those States admitted into the Union subsequently to the 29th September, 1789, we must look to the act of 1793 for the powers to be exercised by the District Court of Missouri in relation to the execution of process, emanating from that court.

It is no objection to the sale, that it was not made in conformity to the law of this State, regulating sales under process of execution. The State laws, as such, are not binding on the officers of the federal government. They can only become so by being adopted by the laws of the United States or by the rules of their courts. When the sale was made, there was no written rule of the court. It had not exercised the power conferred by the 7th section of the act of 1793, of making rules regulating its practice and the returns of process. Under these circumstances, the Marshal made his sale, conforming as nearly as practicable to the laws of this State. In the case of Wayman vs. Southard, 10 Wheat. 22, it was held, that the 14th section of the judiciary act of 1789 authorizes courts to issue writs of execution. In the same volume, in the case of United States vs. Holsted 51, it was maintained that the courts can so alter their process as to sell lands on execution when not subject to sale by the State laws. These cases arose in Kentucky, not one of the States in existence in September, 1789. The case of Fullerton vs. Bank of the United States, 1 Peters 604, originated in the State of Ohio, at a time when the powers of the federal courts, in that State, were similar to those entrusted to the District Court of Missouri, at the time of this sale. This case maintains that a practice or mode of procedure could be adopted by usage, without written rules. The taking the acknowledgment of the deed, was evidence of the sanction of the usage by the court. Such a circumstance must have brought the matter to the attention of the court, and had the manner of conducting the sale been disapproved, the acknowledgment would not have been taken, and a written rule would have been made for the conduct of future sales. We do not see the force of the objection that the usage had not been long practiced. It was conformed to in many cases, sufficient to make it known, and when the usage was established, its effect must be to sustain and support instances under it occurring, as well before as after it had been much practiced. It would sustain the very first instance under it.

The deed, executed by O'Fallon and wife to Mrs. Kennerly, having never been delivered, and being cancelled in the presence of her hus-

band, with his assent and that of the grantor, could convey no title to her.

Judge Ryland concurring, the decree below will be affirmed.

Judge Gamble did not sit in this cause.