HENDRICKS v. WOODS et al., Appellants

**Equity**: JUDGMENT BELOW. It is the custom of this court in cases of equitable cognizance, to defer somewhat to the findings of the trial court.

*Appeal from Monroe Circuit Court.*—HON. JOHN T. REDD, Judge

AFFIRMED.

This was a suit brought by John Hendricks and Wm. P. Hendricks against James F. Woods and Wm. C. Smith, to enjoin the sale of certain land under a deed of trust given by the plaintiffs to secure a note for $530. Woods was trustee and Smith beneficiary in the deed of trust. The petition alleged that the debt for which the note was given was paid in full before the execution of the note, and that the note and deed of trust were obtained by misrepresentation, fraud and imposition.

The facts out of which the controversy arose, were as follows: In May, 1867, judgment was rendered in the circuit court of Shelby county against John Hendricks and one Wm. Hendricks, and in favor of one Rowland, for $400.16. This judgment, though in the name of Rowland, really belonged to Smith. In the fall of 1867 execution was issued and placed in the hands of J. M. Collier, sheriff of Shelby county, who in due time made return that he had received on it, two sums, $130 and $25.56, and that the balance was unsatisfied. In June, 1875, Smith had an *alias*

execution issued for this balance, and on the 24th day of that month the plaintiffs, in settlement of this execution, gave the note and deed of trust in question, the deed of trust containing the usual power of sale on default in the payment of the note.

At the trial the plaintiff offered in evidence the original execution and the indorsements thereon. These were as follows: One dated October 28th, 1867, showing a levy on 160 acres of land as the property of John Hendricks; one dated November 23rd, 1867, showing receipt of $130; one dated November 25th, 1867, showing receipt of $25.56; and one dated November 26th, 1867, as follows: "I return the within execution not satisfied." All these were signed by Collier as sheriff. There was also an indorsement signed by L. Dobbin, the clerk of the circuit court of Shelby county, which, except for the interlineations and erasures hereafter mentioned, read as follows: "Received on the within execution $300 this 27th day of September, 1867."

On the part of the plaintiffs, Dobbin testified that he issued this execution as clerk; that some time in October, 1867, John Hendricks came into the clerk's office and paid him $300, to be applied on the Rowland judgment; that the execution had already been issued, but had not been delivered to the sheriff; that he put the money into an envelope, one end of which was open, and on the same day handed the execution and the envelope with the money in it to Sheriff Collier, who counted the ends of the money sticking out of the envelope to see that it was all right; that this was about a month before the November term of the circuit court, which was held on the fourth Monday of November of that year; that he next saw this envelope lying on the floor the morning after the county safe was robbed, with the end torn off. On cross-examination the witness said that he had memoranda at home, but not at court, which aided his memory as to dates. The execution bore date October 28th, 1867; but the witness testified that the date had been changed by erasure from September 7th

or 27th, but could not say who made the change; did not think it was in his handwriting. Witness also testified that his indorsement on the execution, as above given, had likewise been changed, by drawing a pen through the words, "Of September, 1867," and interlining the words, "And paid the same over to Sheriff Collier, as directed by defendant, this 28th October, 1867." As changed, it read: " Received on the within execution $300 this 27th day, and paid the same over to Sheriff Collier, as directed by defendant, this 28th day of October, 1867." Witness said that both the receipt and the changes and interlineations were in his handwriting, but he could not remember of making them, or the occasion of them; that the change in the date of the receipt corresponded with the change in the date of the execution. He was then shown certain entries in the execution docket of the Shelby circuit court, by which it appeared that the total costs indorsed on the execution were $14.90, that $300 was paid the clerk on the 27th of September, and that the execution was issued to the sheriff on the 27th of October, 1867. Witness said that these entries were in his handwriting, but he did not remember making them. He then stated that the changes in the entries on the execution were not in his handwriting, and he did not know in whose they were.

Plaintiff John Hendricks testified: About one month before the November term of the Shelby circuit court, in 1867, I went to Shelbyville to pay $300 on the Rowland judgment. I first offered the money to the sheriff, Collier. He said he had no execution against me, and refused to take it; said he would go and see the clerk. He came back in a few minutes, and said, " you must pay it to the clerk, and take his receipt." I then went to the circuit clerk's office and paid over the $300 to Mr. Dobbin, who gave me a receipt for the same. Mr. Dobbin put the money in an envelope. The sheriff, Collier, came in about this time, and the clerk handed him the envelope containing the money, and also at the same time gave him an execution. I sup-

pose it was an execution. It was some paper. Did not read it. Heard the clerk tell the sheriff that there was $300 to be applied on the Roland execution. The other payments indorsed on the execution, the $130 and the $25.56, were paid to Collier, by me in addition to the $300. They made the balance of the judgment after deducting the $300 paid to Dobbin. The consideration of the note now in controversy was the balance claimed by Smith to be due on the old Rowland judgment. This is how I came to give the note and deed of trust now in controversy : On the 24th day of January, 1875, the day they were executed by me and my son, Smith and one J. N. Brown came to my house, and Smith told me that the sheriff had agreed to meet him there ; that the sheriff had an execution against me, issued in the case of Rowland against myself and others ; that he owned and controlled the same, and that he would have my property levied upon if I did not pay off the execution or secure the .same. He said if I would give him a note with security by deed of trust on my property, he would give me time to make the money out of Dobbin. He said that I could sue Dobbin, but he could not ; and he would furnish and pay his own attorney to bring the suit for me, and it should not cost me a cent. I claimed that I had a right to a homestead in my land; but Mr. Brown said to me that I was not entitled to any homestead in the land ; that a case of that kind had been before Judge Redd, and he had decided that a homestead could not be claimed in such a case. I also asked them time to consult a lawyer ; but Smith said, No ; if the matter is not arranged before the sheriff gets here, we shall seize your property. Brown then said he thought the best thing I could do was to give the note and deed of trust, and be-lieving what they told me, and relying on their statements, we gave the note and deed of trust. Smith told me that Brown was his lawyer. At that time I lived on the real estate. My house was on the small tract, three acres and a fraction, which joined the eighty acre tract described in

the petition. The mill property described in the deed of trust is not on the land upon which I lived at that time. The forty acre tract described in the deed is not adjoining the other land. My family consisted of myself, a son and two daughters; the son, being the youngest, is now eighteen years old. The land was worth from $1,000 to $1,200.

On cross-examination, the plaintiff, John Hendricks, testified: In 1873 a motion was filed in the circuit court of Shelby county, in the case of Rowland against myself and others, to expose my property to sale under the execution, the old original execution, read in evidence here in this cause, and testimony was taken on said motion in regard to the payment of the $300. I was present and resisted said motion, and heard Leonard Dobbin and Sheriff Collier both testify, and I also gave my evidence on the trial and hearing of said motion; Col. Thos. L. Anderson appeared as my attorney in said motion. I understood that that proceeding was abandoned, and the next I heard of the matter the defendant, Smith, had out a new execution against me. When I made the last payment of $25.56 on said execution, Sheriff Collier gave me a memorandum of all the payments I had made on said execution, including the $300 I paid to Dobbin as before stated.

Wm. P. Hendricks, one of plaintiffs, testified: I was present and heard what was said at the time the note and deed of trust was given. When Smith and Brown came, Smith asked if the sheriff had come. He said the sheriff had promised to meet him there that day at noon, to levy on property; but if father would give him a note and deed of trust, he would wait on him till he could make the money out of Dobbin; that he had learned that father could make it out of Dobbin, but he (Smith) could not sue Dobbin. My father claimed that he could hold a homestead; but Brown told him he could not; that the debt accrued before the homestead act passed. Smith said if the deed of trust was not made before the sheriff came, he would not go into the arrangement. We asked for time to con-

sult a lawyer, but he refused. Smith had been at our mill, and at father's and my house before this—about a week before. He told us then that he had ordered out the execution, and that it was then in the hands of the sheriff of Monroe county.

John Hendricks, Jr., son of the plaintiff, John Hendricks, testified: When I came into the room where my father, Mr. Smith and Mr. Brown were, Mr. Brown was writing the deed of trust. I heard father say, "You won't give me any time to see counsel. I'll have to do it." Brown said, "Yes, it is the best you can do. If it is not done before the sheriff comes, Smith won't do it."

Defendants, on their part, offered the deposition of Collier, who swore that he received the execution October 28th, 1867; that some weeks before that John Hendricks told him that he wanted to pay some money to him on account of the Rowland judgment, but witness told Hendricks that he had no execution against him, and having a large amount of money already on hand and an insecure place to keep it, he could not take his. Witness further said: Afterward, and on the same day, I had a further conversation with John Hendricks, in which he said he had left the money, I think in the neighborhood of $300, with the clerk, Dobbin, and that he expected to have the balance before an execution issued; this might have been as much as a month before the execution came to my hands. Some days after this Dobbin handed me an official envelope sealed and said by him to contain $300, with Hendricks' name written on the back, which he said was John Hendricks' money, and which he requested me to deposit in the county safe for safe keeping. I did so, and never saw it again till the morning after the safe robbery, which occurred, I think, on the night of November 20th, 1867. I never knew what the envelope contained, except as stated to me by Dobbin. Wm. J. Holliday, the county clerk, had the custody of the safe. After the execution came to my hands I received no instructions from either John Hendricks or Dobbin about

the envelope. I never received any money on the execution except the $130 and the $25.56. When the execution came to me it had this indorsement on it: "Received on the within execution $300, this 27th day of September, 1867. L. Dobbin, Clerk." I have the execution before me, but this indorsement has been changed. The witness then pointed out the changes the same as shown by the testimony of Dobbin, and proceeded: I don't know when or why these changes were made. There have also been changes made in the face of the execution. The figures giving the day of the month, and also the month, have been changed. I mean the date showing the issue of the execution. It appears to have been originally dated as follows: "27th day of September, 1867." The figure "7" (in the 27th) has been changed to a figure 8, and the word September to October, so as to make it read "28th day of October, 1867." The said changes were made after I returned said execution. They are in the handwriting of the said Leonard Dobbin.

Defendant Smith, testified: I was at the house of Mr. Hendricks a week before the note and deed of trust were executed. I had been to Paris, Monroe county, to see the sheriff and to arrange with him to meet me at the plaintiff's house, to levy on property to satisfy an execution sued out in the Rowland case. I told the plaintiffs (at that time) that an execution was then in the hands of the sheriff. John Hendricks became exceedingly angry; said he had paid that money once, and he thought it hard that he should have to pay it again. I reasoned with him, and said it was hard on him, but that it was his misfortune to have paid the money to the wrong man. He then became somewhat reconciled, and we talked about the matter in a friendly way. He told me that he had no money, but talked as though he might secure it, if I would give him time. I told him that I was willing to give him time, but that I wanted it settled and secured. Believing from what he said to me at that first interview, that he would secure the

debt on my giving him time, I took Maj. Brown with me when we went back a week afterward, to meet the sheriff. He took along some blank deeds of trust. When we met, we talked the matter over with the plaintiffs. I told them what I had come for; that the sheriff had agreed to meet me there at twelve o'clock, to levy on property, if the matter could not be settled. I proposed to extend the time if he would give me a note with a deed of trust on the land. He (John) spoke of his right to claim a homestead. I told him that I was advised that he was not entitled to homestead in this case. Brown may have told him the same. Brown was my attorney. I may have told plaintiffs so. John Hendricks spoke of enjoining the execution. I told him that was all right; that if he enjoined he would have to give a bond, and that would make me safe. After some further conversation about the time, it was finally agreed that plaintiffs would give a note for the $300 and interest, (amounting to $530,) and secure the same by deed of trust, which was done. The time agreed upon was twelve months. It was all done as quietly and as good naturedly as we are now—not a threat was made, unless it can be called a threat to tell one that you have issued an execution and intend to levy on property. I made no misrepresentations. In the whole transaction I aimed to be fair and candid, and was as much so as in any transaction I ever had. I did not tell the plaintiffs that I would furnish them a lawyer to sue Dobbin, nor did I say that I would wait for my money till he could make it out of Dobbin. I did not refuse to give him time to consult a lawyer. My note on which Rowland obtained judgment bore date in the year 1864.

J. N. Brown, on the part of defendants, testified: I went with defendant Smith, to the house of plaintiffs, and was present when the parties were negotiating for the settlement, and up to the time of the execution and delivery of the note and deed of trust. Think I was present all the time, and heard all that was said. Smith and John Hendricks talked some about the payment of the $300. Hend-

ricks claimed that he had paid it once and that it was hard on him to pay it again. Smith answered, yes, it was hard on him, but contended that Mr. Hendricks had paid it to the wrong man, and that he had the right to look to Mr. Hendricks for the balance of his judgment. Hendricks then spoke about claiming the property as a homestead, and asked me if he could not hold it. I gave him my opinion, and very candidly too, that he could not, if the debt accrued before 1866, the date of the homestead law then in force. The result of the conference and negotiation was the execution and delivery of the note and deed of trust now in controversy. After the execution and delivery of the note and deed of trust, Hendricks told me of the payment of the money ($300) to Dobbin, and of having taken his receipt for the same, and the contents thereof, and asked my opinion as to whether Dobbin was liable. I told him my opinion was that if Dobbin had received and receipted to him for the money, and had promised in the receipt to apply it on the judgment or execution, and had failed to do so, then he could recover the same by suit. He then requested me to institute the suit for him. I told him that I did not practice in the Shelby circuit court, but would, if he desired it, prepare his petition and send it to the Shelby circuit clerk, when I returned home, (at Macon, Missouri,) which I did. It was not expected that I was to go to court and attend to it. I do not know what became of the case. I made no charge for preparing the petition. Smith did not in my presence tell Hendricks that he would furnish him a lawyer to sue Dobbin. I did not hear Smith say that he would wait on Hendricks until he could make the money out of Dobbin. Nothing of that kind was said. I did not hear either of the plaintiffs request time to counsel with their attorneys. Nothing of the kind was intimated. I have given my deposition in this case. In the deposition my testimony in reference to homestead is the same as now given: That if the original notes on which

the judgment was rendered bore date prior to 1866, then, in my opinion, the homestead right did not exist.

*Dysart & Mitchell* for appellants.

*Wm. J. Howell* for respondents.

SHERWOOD, J.—This was an equitable proceeding to enjoin a sale of land under a deed of trust. Upon final hearing the injunction prayed was made perpetual. The chief feature of the case was whether a certain $300 had been paid the sheriff, Collier, to be applied on the execution issued in favor of Rowland, the nominal plaintiff in the execution. The money referred to had been paid, it seems, in the first instance to one Leonard Dobbin, then clerk of the circuit court of Shelby county, and the question was whether Collier had received the money at the time the execution was in his hands. Upon this point there was direct conflict. There was some testimony tending to show that Hendricks, the defendant in the execution, was rather hurriedly drawn into the execution of the note and deed of trust; the note representing the $300 and interest. And there was testimony tending to show that Hendricks was fully apprised of the second coming of Smith, the beneficial owner of the judgment, who, it seems, had been to see Hendricks, a week before on the subject of securing the debt. As to the prior visit of Smith, there is no conflict of testimony. It has been our custom, even in cases of equitable cognizance, to defer somewhat to the findings of the trial court. This consideration as well as the evident conflict of testimony, as to the payment of the money to the sheriff, has induced my associates to approve the finding and ruling of the circuit court. From this view, by what I regard as the great preponderance of the evidence, especially the entries in the execution docket, and the alterations in indorsements on the execution made by Leonard Dobbin, as he himself admits, as well as the change in the date of the issuance of the execution made, as sworn by

Collier, in Dobbin's handwriting, I am constrained to differ from my associates. Moreover, I think that the giving of the note and deed of trust, notwithstanding the $300 may have been paid the sheriff may well be upheld as being the compromise of a disputed or doubtful claim. 1 Parsons Notes and Bills, 196, *et seq.*, and cases cited. As my associates, however, take a different view of this matter, and regard the payment or non-payment of the money to the sheriff as the dominating question in this case, and think that an unfair advantage was taken of Hendricks at the time the note was given and deed of trust made, the judgment must be affirmed, in which affirmance all concur except myself.