WHEELER, Defendant in Error, *vs.* BARRET, Plaintiff in Error.

1. A. executed and delivered his note to B., who was to negotiate the same, and with the proceeds pay a note about to become due from A. to C. B. retained the note until after it purported to be due, and then negotiated the same to an innocent party for value, and converted the proceeds to his own use. A. was relieved against the payment of the note. (SCOTT, J., dissenting.)

*Error to St. Louis Court of Common Pleas.*

This was a proceeding instituted by Wheeler to restrain the collection of a note, and to compel the holder to deliver the same up to be cancelled. The facts appear in the opinion of the court.

*A. Buckner,* for plaintiff in error, insisted that Barber was to be regarded merely as Wheeler's agent for negotiating the note, and so the maxim that, of two innocent parties, he whose act has been the cause of the loss must bear it, was applicable.

*Krum & Harding,* for defendant in error. 1. The note in question, being overdue when it was transferred to Barret, was taken by him subject to all defences and equities connected with it. (Story on Prom. Notes, §178. 15 Mo. Rep. 399. 3 D. & E. 80. 2 Caines, 369. 5 Pick. 312. 5 N. H. 159.) 2. The rights and liabilities of the parties are not changed by Barber's agency, which ceased when the note to Smith, or at farthest, when the note in question became due.

RYLAND, Judge, delivered the opinion of the court.

From the statement agreed upon by the parties in this case, the question here is, upon whom shall the loss fall, on Wheeler or Barret? It seems that Wheeler owed Solomon Smith a sum of money, $1200, which was to be paid on the 2d of June, 1850. The payment was secured by deed of trust on real estate of Wheeler. On the 15th of March, 1850, Wheeler made and delivered to R. Barber his negotiable promissory note for $1375, payable twelve months after date to R. Barber or

37—VOL. XX.

order, with six per cent. interest from date. Barber was to have this note discounted, and apply the proceeds thereof to the payment of the note to said Smith, becoming due in June. The payment of this note to Barber was also secured by deed of trust on the same property on which the deed of trust in favor of Smith had been given. Barber gave to Wheeler the following receipt for this note:

"Received, St. Louis, March 15th, 1850, of Jonathan Wheeler, his note at twelve months, for thirteen hundred and seventy-five dollars, to be negotiated, and the proceeds of said note to be appropriated in payment of a certain note executed by him to Solomon Smith for twelve hundred dollars, secured by deed of trust, and falls due on the 2d day of June next, as can be seen by referring to the records. "R. BARBER."

It appears that this note of $1375 was given alone for the purpose of getting it discounted, in order to pay the note to Smith; that Barber did not pay the note to Smith at maturity, nor did he ever pay it, nor has it been paid; that Barber did not negotiate the said note for $1375 until some six months after it purported to be due; that is, some time in September, 1851; that he then endorsed the note and delivered the deed of trust to Barret, who took the same in good faith, without knowing the facts relative to the making thereof, for a valuable consideration; that the plaintiff, Wheeler, had no knowledge of this assignment to Barret, nor had he any advantage therefrom; that Barber is dead and his estate insolvent.

This is a proceeding by Wheeler to have the collection of this $1375 note enjoined, the note cancelled, and the deed of trust removed from his property, and for general relief.

Upon the agreed case, the court below declared the law for the plaintiff, and decreed that Barret be perpetually enjoined from negotiating and transferring the said $1375 note, and that he and all persons be enjoined from attempting, by action at law or otherwise, to collect the same, and that defendant deliver up the note for cancellation, &c.

1. Now, upon whom shall this loss fall? The note being over-

due when Barret got it from Barber was, of itself, a sufficient fact to make Barret enquire and ascertain the reason of its dishonor, and although the agreed case shows that he took it in good faith and for value, yet he must stand and can only stand in Barber's place. He must be considered as giving credit and faith to Barber only, and to become willing to take the note as Barber held it. The note is payable to Barber, or order, twelve months after date. Eighteen months after date, Barber sells it to Barret. What principle is there which can be invoked to take this case out of the general rule applicable to such transactions? It seems on its face to be merely a promissory note in a negotiable form, payable to Barber or his order, for a large sum of money, at long credit. What can make us consider the payee in this note as the mere agent of the maker, with unlimited power to dispose of the note, unrestrained as to time or other circumstances? If Barber be the agent of Wheeler at all, he must be considered so to a special intent and for a specified object, with special and limited authority.

There is, in our opinion, nothing in the record which takes this case out of the ordinary course of adjudication in promissory notes and bills which come into the hands of third persons after dishonor. It must therefore be controlled by such.

Judge Story says : " If the transfer is after maturity of the note, the holder takes it as a dishonored note, and is affected by all the equities between the original parties, whether he has any notice thereof or not. The equities here meant are such as attach to the particular note, or such as grow out of the transaction which gave rise to the note." (Story on Prom. Notes, §178.) In *Emerson* v. *Crocker*, (5 N. Hamp. 163,) the Supreme Court of New Hampshire held that the rule that, " whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it, holds only in cases of innocent holders, into whose hands the note came in regular course of business, before it became payable. If the note be overdue at the time

the agent so transfers it, the person who takes it must stand in the situation of the agent." In *Gullett* v. *Hoy & Orton*, (15 Mo. Rep. 400,) it was said, "This note being endorsed after due, the endorser took it subject to all the equities attached to it in the hands of the payee."

In *Furman* v. *Hasken*, (2 Caines Rep. 372,) Kent, Chief Justice, says: "The note was payable on demand; it was not negotiated to the plaintiff until nearly eighteen months from the period when it was given." The Chief Justice said: "The lapse of time must clearly be considered as placing the note in the situation of one due and dishonored, and as imposing on the endorsee the same risk. No person of common prudence will take such a note, without inquiry concerning the occasion of its being so long outstanding, and it is incumbent on him to satisfy himself that it is good. He takes it on the credit of the person from whom he receives it."

In *Brown* v. *Davies*, (3 Term Rep. 80,) it was held that, where a promissory note has been indorsed to the plaintiff after it became due, who sues the maker upon it, the latter is entitled to go into evidence to show that the note was paid, as between him and the original payee from whom the plaintiff received it.

It is needless to multiply authorities upon this point. It is now the settled rule that the person receiving a note over due takes it with all its equities between maker and payee. In this case, then, we consider that Barret stands in the same situation as his endorser, Barber, did, and that being so, the plaintiff, Wheeler, is entitled to have relief against the note.

The judgment of the Court of Common Pleas must therefore be affirmed; Judge Leonard concurring herein.

Scott, Judge. In my opinion, this judgment should not stand. Admitting that Barret's taking the note after it was overdue gave a right to Wheeler to insist on all equities he might have against it, in an action by Barret, yet he has no equity and shows none. His only defence is, that he has been

defrauded by his own agent. It is a rule that, when one of two innocent men must sustain a loss caused by a third person, he who has enabled that person to commit the wrong must bear the loss.

A motion for a rehearing of the above cause was overruled.