HOLLINS McKIM, trading as McKIM & Co. *vs.* FRANCIS T. KING, WILLIAM A. FISHER and JOSHUA A. TOMPKINS, Trustees.

*Transfer of Overdue interest coupons—Trover for their Conversion.*

Where interest coupons payable to bearer on a day named, are transferred after maturity, the holder takes no better title than the transferrer had, and if they were obtained by him by fraud or theft, no title passes against the lawful owner; and he can maintain trover against the holder for their conversion.

APPEAL from the Court of Common Pleas.

This was an action of *trover* by the appellees against the appellant, for the conversion of certain overdue inter-

McKim & Co. vs. King, et al.

est coupons detached from the first mortgage bonds of the Western Maryland Railroad Company. It appeared at the trial, that the coupons in question had been overdue for many years. The company had funded them some years since, and the period of that funding having expired, it was engaged in refunding all its overdue coupons for a further period of ten years. Tompkins, one of the plaintiffs, took the coupons to the office of the company, and there found John S. Harden, Jr., an employé of the company, and inquired what was to be done with them. Mr. Harden stated that they were to be extended for ten years at six per cent.; that they should be left for examination, and would then be sent to the Safe Deposit and Trust Company, and that a certificate for them would be sent to the plaintiffs. The coupons were left with him. Tompkins had no intention to deliver the coupons to the company to be kept by it; the understanding was, that they were to be taken to the Safe Deposit and Trust Company. John S. Harden, Jr., was in the employment of the company particularly, if not solely, for the purpose of conducting the refunding of its coupons. The coupons were not delivered to the Safe Deposit and Trust Company, but John S. Harden, Jr., took them to the appellant, a banker, and borrowed money upon them. A demand for the coupons was made upon the appellant by the appellees before the institution of the suit. Prayers were offered on both sides, but their insertion is deemed unnecessary. The plaintiffs obtained a verdict and judgment, and the defendant appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON and IRVING, J.

*Edward Otis Hinkley*, for the appellant.

*William A. Fisher*, for the appellees.

ROBINSON, J., delivered the opinion of the Court.

Certain overdue coupons of the first mortgage bonds of the Western Maryland Railroad Company, belonging to the appellees, were delivered by them to John S. Harden, Jr., a clerk in the office of said company, for the purpose of being *refunded.* These coupons were subsequently deposited by Harden with the appellants, as collateral security for a loan of money made by them to him.

The coupons were payable to bearer on a day named, and had been overdue for some time.

The main question in this appeal is, whether the appellants are entitled to hold the coupons thus deposited with them by Harden, as against the demand of the appellees?

By a series of decisions in both the Federal and State Courts, coupons payable to bearer or order are treated as promissory notes, possessing all the incidents of negotiable paper, and as such entitling the holder to all the privileges and subjecting him to the liabilities of ordinary commercial paper, by the law-merchant. *Moran, et al. vs. The Commissioners of Miami County,* 2 *Black,* 722; *Gelpecke vs. City of Dubuque,* 1 *Wallace,* 175; *Thompson vs. Lee County,* 3 *Wall.,* 327; *Smith vs. Sac County,* 11 *Wall.,* 139; *County of Ray vs. Vansycle,* 96 *U. S.,* 675; *County of Bates vs. Winters,* 97 *U. S.,* 83; *Burroughs on Public Securities,* 581.

If passed before maturity, the holder thereby acquires a perfect title, without regard to the mode or manner by which such title was obtained by *the transferer,* and unaffected by the equities attaching to them in the hands of the original parties. On the other hand, if they are transferred after maturity, the holder takes no better title than the transferer had, and if they were obtained by him by fraud or theft, no title passes against the lawful owner. *Burroughs on Public Securities,* 581–3; *Jones on Railroad Securities,* secs. 324–5; *Evertson vs. National Bank of Newport,* 66 *New York,* 14; *Fisher vs. Leland, et al.,* 4 *Cush.,* 456.

At one time it was doubted whether the mere fact that a negotiable note was overdue at the time of the transfer, was in itself sufficient to affect the title of the holder, and whether it was not necessary that there should be something on the face of the paper, besides the day of payment, to show that it had been actually dishonored. This doubt was expressed by Lord KENYON in *Brown vs. Davies*, 3 *T. R.*, 80, decided in 1789, but ASHURST and BULLER, J., were of opinion that the mere fact of its being overdue at the time of the transfer, was sufficient to affect the title, and that one taking a note under such circumstances, takes it upon the credit of the transferer. Subsequently in *Boehm vs. Sterling*, 7 *T. R.*, 423, 430, Lord KENYON gave his assent to the rule thus laid down, and it has never since been questioned.

We have found no case to support the appellant's contention, that like bank notes, a *perfect title* passes to the coupons by *delivery* both *before* and *after maturity*. Bank notes are issued for the purpose of indefinite circulation, while coupons although transferable like other commercial paper after maturity, subject to the rights of antecedent parties, their circulation, as money, is not the object for which they are issued.

In *Evertson vs. National Bank of Newport*, 66 *N. Y.*, 14, the coupons were purchased before the days of grace had expired, and the Court held that the purchaser acquired a perfect title, because the coupons were entitled to days of grace allowable to commercial paper.

"It is only as negotiable commercial paper," say the the Court, "that the plaintiff, as a *bona fide* purchaser, could acquire a good title to the coupons from one having no title thereto ; and he can only acquire such title by a purchase under the same circumstances that would give him a title to other commercial paper."

In *Vermilye & Co. vs. Adams Express Company*, 21 *Wall.*, 139, it was held that bonds and treasury notes of

the United States payable to bearer at a definite time, were to be considered as negotiable paper, and their transferability is subject to the commercial law of other paper of that character ; and if passed after maturity the title of the holder was subject to the rights of antecedent parties, to the same extent as other paper bought after its maturity.

Justice MILLER in delivering the opinion of the Court says :

" Bankers, brokers and others, cannot, as was attempted in this case, establish by proof or usage a custom in dealing in such paper, which, in their own interest contravenes the established commercial law."

Finding no error in the rulings below, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 11th July, 1882.)