Ford v. Phillips.

FORD *et al.*, v. PHILLIPS *et al.*, *Appellants.*

83 523
153 622
83 523
f 156 173

1. **Equity Practice :** SUPREME COURT. Where in an equity case the evidence strongly tends to support the finding of the trial court, the Supreme Court will only review questions of law.

2. **Negotiable Note :** PAST DUE, TRANSFER OF. One who purchases a past due negotiable note takes only the actual right and title of his transferrer subject to all the equities attaching to the note itself.

3. ———— : ————. If the transferrer held it only for collection his transferee after due takes it in the same capacity.

*Appeal from Jackson Circuit Court.*—HON. F. M. BLACK, Judge.

AFFIRMED.

*Karnes & Ess* for appellants.

(1) The evidence shows that Mrs. Ford indorsed the note in suit and delivered it to her agent, F. H. Benson, and the Supreme Court will not disturb this finding. *Royal v. Jones*, 78 Mo. 403 ; *McCullough v. McCullough*, 31 Mo. 226 ; *Siebert v. True*, 8 Kan. 52. (2) The note was the property of Mrs. Ford and she had the right to transfer it ; besides her husband consented to its transfer and for that reason it was valid. *McLain v. Weidemeyer*, 25 Mo. 364 ; *Menkens v. Heringhi*, 17 Mo. 297 ; *Prestwick v. Marshall*, 7 Bing. 565 ; *Bank v. Joy*, 41 Me. 568 ; *Stevens v. Beal*, 10 Cush. 291 ; *Miller v. Delameter*, 12 Wend. 433 ; *Roland v. Logan*, 18 Ala. 307. The husband's consent to the indorsement may be inferred from circumstances. Bishop on Married Woman, sec. 100, note. (3) When one of two innocent parties must sustain a loss caused by a third person, he who has enabled that person to commit the wrong must bear the loss. (4) Possession as to personal as well as real property, is so far a presumption of title that the burden of

proof is on the party by whom such possession is assailed. Wharton on Ev., sec. 1331; *Vastine v. Wilding*, 45 Mo. 89; *Baxter v. Ellis*, 57 Me. 178; *Rubey v. Culbertson*, 35 Ia. 264. (5) The party in possession of a negotiable instrument is *prima facie* the owner of it. 31 Mo. 22. But if payable to order he is not such, unless indorsed as this was. 45 Mo. 89, *supra*. (6) Benson understood that his authority was to take the note, use it as his own, and account to her for the proceeds. This was the extent of his agency, as he claimed. He acted on this, and whether he exceeded his authority or not, her conduct was such that she cannot now be heard to complain. The note, with her indorsement, was transferred to White, August 13, 1877. In September following Mrs. Ford dismissed Benson as her agent, in charge of her business, and substituted her husband. As to her separate property, she had a right to appoint an agent. Story on Agency, sec. 6; *Wilcox v. Todd*, 64 Mo. 390; *Hall v. Callaghan*, 66 Mo. 316.

*Pratt, Brumback & Ferry* for respondents.

(1) The evidence fully justified the trial court in finding that the note was left with Benson solely for the purpose of collecting the interest and principal, and accounting to Mrs. Ford for it, whether the court may have been right or wrong in the opinion that Mrs. Ford did endorse the note, and that her signature was not a forgery. (2) Purchasers of notes or bonds past due take nothing but the actual right and title of the vendor. 1 Danl. Neg. Notes, sec. 724; *Foley v. Smith*, 6 Wall. 492; *McKim v. King*, 8 Md. 502; *Wheeler v. Barrett*, 20 Mo. 573; *Livermore v. Blood*, 40 Mo. 48. (3) The rule invoked by the counsel for the appellants "that when one of two innocent parties must sustain a loss caused by a third person, he who has enabled that person to commit the wrong must bear the loss," holds only in cases of innocent holders into whose hands the note came in regular course of business before it became payable. *Emerson*

*v. Crocker,* 5 N. H. 163; *Wheeler v. Barrett,* 20 Mo. 573; *Foley v. Smith,* 6 Wall. 492.

EWING, C.—The petition alleges that plaintiffs are husband and wife; that Mary J. Phillips was the wife of E. A. Phillips; that she owned in fee the real estate described in the petition, and that on July 25, 1874, the said Mary J. Phillips and her husband borrowed of said Anna M. Ford twelve hundred and fifty dollars, and executed to her their promissory note therefor, due in three years, bearing ten per cent. interest from date, and that they secured said note by a deed of trust, in the nature of a mortgage, on said real estate, in which one E. P. Nicholson was named as trustee; that interest on said note was paid to Anna M. Ford until January, 1877, and one year's interest beside, and that the balance of twelve hundred and fifty dollars, with interest from January 25, 1878, at ten per cent. was due to the said Anna M. Ford; that said Mary J. Phillips in February, 1880, died intestate; that there was no administration on her estate, and that Mabel Phillips and Carrie Phillips, her only children, and her sole heirs at law and as such became the owners of said land, subject to said deed of trust and courtesy of E. A. Phillips, and that both of said children are infants.

It further alleges that in August, 1877, one F. H. Benson, without the knowledge or consent of plaintiffs, or either of them, got possession of said note, and placed the same in the possession of C. J. White, who claimed to own the same; that neither of plaintiffs indorsed or transferred said note, and the same is owned by Anna M. Ford, and that White will not let plaintiffs have said note, but threatens to sell the land described in the deed of trust to pay the note, though he does not own the same, nor entitled to any money thereon; that the trustee, Nicholson, lives in Texas and he cannot be served by ordinary process; that the said note was not filed because held by said White, but the original deed

of trust, which had been recorded in Book B, No. 6, page 419, Jackson county, Missouri, was filed with the petition, giving the said Anna M. a first lien on said land. The petition then prays the court to ascertain the amount due plaintiffs on said note; to compel White to produce and file the note; to decree payment of said note, and in default thereof, to direct a sale of said land to pay the same; to decree that White has no title to said note or any right to any money due thereon; to foreclose the deed of trust; to enjoin White from causing or procuring said land to be sold under said deed of trust; to appoint a guardian *ad litem* for the said infants, and for all other proper relief.

The trustee, Nicholson, answered and asked the court to protect him. The guardian *ad litem,* J. W. Jenkins, answered, denying all the allegations of the petition. C. J. White answered denying all the allegations in the petition; and then alleged that Mrs. Ford had sold the note to Benson; and that he, White, held the note for value from Benson as assignor.

A reply was filed by the plaintiffs to the separate answer of C. J. White, denying all the allegations therein contained. This was all of the pleadings.

To sustain the issues, the plaintiffs offered in evidence the note and trust deed mentioned in the petition, the execution of which was admitted. The note, having been brought in by White, was read, and which is as follows, without the indorsements:

"$1250.00             KANSAS CITY, July 25, 1874.

"Three years after date, we jointly and severally promise to pay Anna M. Ford, or order, at the Kansas City National Bank, at Kansas City, Mo., twelve hundred and fifty dollars, for value received, with interest from date, at the rate of ten per cent. per annum, payable semi-annually.

MARY J. PHILLIPS,
E. A. PHILLIPS."

Ford v. Phillips.

There was other evidence on both sides tending to prove the respective allegations of the pleadings, some of it very contradictory and as the best statement of its substance and to avoid the incorporation of all the evidence in the case; and as showing what that evidence tended to prove, we incorporate the finding of the circuit court, after hearing the whole case, as follows:

" That the note in the proceedings herein described, and now in controversy, was endorsed by Mrs. Anna M. Ford, one of the plaintiffs herein, and by her delivered to F. H. Benson as her agent, to collect the interest and also the debt when due, and to account to her therefor; that her husband and co-plaintiff, Jonathan Ford, did not endorse the same, nor exercise any control over it; that F. H. Benson was the agent, and as such transacted all of the business of Mrs. Ford, and her husband, the said Jonathan Ford, knew Benson was thus transacting her business, and had given his consent to Mrs. Ford to do with the note and her other property as she saw fit; that Benson, wrongfully and without authority, used the note for his own uses and purposes as collateral security several times, and the last time through one White he had used it as a collateral to secure a note of $2,000.00, payable to one Miller; that all these transactions were without the knowledge or consent of Mrs. Ford or her husband, Jonathan Ford; that the said note was thus hypothecated by Benson on the 13th of August, 1877, and after its maturity; that the defendant, White, was the agent of Miller in the transaction; that neither he nor Miller had any knowledge at the time of making the loan that Benson had no authority for thus hypothecating the said note, or that he was making any improper use of it; that Jonathan Ford did not know that said note had been thus used until some time in September, 1878, and after Benson had failed and become bankrupt, and Mrs. Ford knew nothing of the transaction until some time after that; that after the note to Miller became due, defendant, White, took it up, and now holds

the same, having paid the full value therefor; and also holds the note in controversy as collateral therefor; and the court also finds all the other issues joined for the plaintiffs, and that there is due to said Anna M. Ford and said Jonathan Ford, her husband, on the promissory note, and deed of trust mentioned in the petition, sixteen hundred and eighty-seven dollars and fifty-five cents ($1,687.55), and that plaintiffs, by virtue of said deed of trust, have a lien on said land covered by said deed of trust for said sum so due, superior and paramount to the rights of each and all of the said defendants in said land.

"It is, therefore, considered adjudged and decreed that said defendant, C. J. White, surrender up said promissory note and place same on file with the papers in his care, and that he is hereby cut off and barred from all right and claim thereto, and to all moneys due or to become due thereon or on said deed of trust; that plaintiffs have a first lien on said land for the sum due them as aforesaid, with interest from this date at rate of ten per cent. per annum till paid, and costs, and that unless said defendants or some one or more of them pay to plaintiffs, or to the clerk of this court for them, within thirty days from this time said sum of sixteen hundred and eight-seven dollars and fifty-five cents ($1,687.55) with interest from this time at rate of ten per cent. per annum and costs of suit, said land to be sold to pay the same and that special execution issue to the sheriff to make such sale, and that on sale made and confirmed by this court each and all of said defendants be barred, cut off and foreclosed from all right, title, interest and estate to and in said land. Said land is situated in said Jackson county, Missouri." Then follows a description of the land.

The defendants then perfected their appeal and are now before this court for hearing.

I. "It is the custom of this court in cases of equitable cognizance, to defer somewhat to the findings of the trial

court." So this court held in *Hendricks v. Woods*, 79 Mo. 590, and which has been the rule for many years. Under the evidence then in the case at bar, we are satisfied the court below, at least, had evidence strongly tending to prove the facts as found. It can then only be upon some question of law we can reverse the judgment, if at all.

II. There is no controversy about the legal power of the wife to transfer the note. She had the power, and the court below so held. As between Mrs. Ford and her agent, Benson, what rights did she confer on him by her indorsement of the note and delivery thereof to Benson ? The circuit court found the fact to be that Mrs. Ford indorsed and delivered the note to Benson as her agent after its maturity, "to collect the interest and also the debt when due, and to account to her therefor." This then was all the authority Benson had over the note, as between himself and his principal. In the absence of notice, actual or constructive, of Benson's title, in one who should buy this note, or receive it as collateral, as in this case, he would be an innocent holder against the world. Therefore, if this note came into the possession of the defendant, White, for a valuable consideration and without notice, actual or constructive, of the rights of Mrs. Ford, from Benson, who had the legal possession thereof, then his title is good against Mrs. Ford and all others, under the well-established rule that when one of two innocent parties must suffer loss caused by a third person, he who has enabled that person to commit the wrong must bear the loss.

It is well established that at the time Benson hypothecated the note to White, he had no knowledge that Benson was the mere agent of Mrs. Ford, but believed he was the genuine owner thereof. But, it is insisted by the respondent that this note being past due, the purchaser, White, took nothing but the actual right and title of the vendor, Benson, and subject to all rights attaching to the note itself. *Barnes v. McMullin*, 78 Mo. 260 ;

*Cutler v. Cook*, 77 Mo. 388; *Emerson v. Crocker*, 5 N. H. 159; 20 Mo. 573. It is laid down as a rule in Daniels on Negotiable Instruments, sec. 724, 724*a*, that "negotiable paper, whether made for accommodation or otherwise, may be transferred by indorsement or by delivery (as the case may be) either before it has fallen due or afterwards. * * * But there is this vital distinction between the rights of a transferee who received the paper before, and of one who received it after maturity. The transferee of negotiable paper to whom it is transferred after maturity, acquires nothing but the actual right and title of the transferer; and the like rule applies to the transferee who takes the paper after the refusal to accept by the drawee, provided he had notice of such refusal." In *Emerson v. Crocker*, 5 N. H. 159, it is held that the rule: "Whenever one of two innocent persons must suffer by the act of a third, he who has enabled such third person to occasion the loss, must sustain it, * * * holds only in cases of innocent holders, into whose hands the note came in the regular course of business, before it became payable. If the note be overdue at the time the agent so transfers it, the person who takes it must stand in the situation of the agent." The same doctrine is maintained in *Wheeler v. Barrett*, 20 Mo. 573. In Story on Promissory Notes (5 Ed.) sec. 178, it is said: "If the transfer is after the maturity of the note, the holder takes it as a dishonored note, and is affected by all the equities between the original parties, whether he' has any notice thereof or not." The equities between the parties are only such as attach to the particular note. And it is said (sec. 178, *supra*): "The true test to determine whether a note is subject to an equity, set up by the maker, is this: Could the payee at the time he transferred the note, have maintained a suit upon it against the maker, if it had then been mature." The same doctrine is held in *Livermore v. Blood*, 40 Mo. 48; *Foley v. Smith*, 6 Wall. 492; *Vermilye v. Adams Ex. Co.*, 21 Wall. 138; *McKim v. King*, 58 Md. 502.

This last case was quite similar to the one at bar. It was a case where certain *overdue* coupons, of the first mortgage bonds of the W. M. Ry. Co., owned by the appellees, were delivered by them to one Harden, a clerk in their office, for the purpose of being refunded. Harden deposited them as collateral security for a loan of money with the appellants. The plaintiffs brought an action for the conversion of the coupons, and obtained judgment. Defendants appealed. The judgment was affirmed, the court of appeals holding that "if passed before maturity, the holder thereby acquires a perfect title, without regard to the mode or manner by which such title was obtained by *the transferrer*, and unaffected by the equities attaching to them in the hands of the original parties. On the other hand, if they are transferred after maturity, the holder takes no better title than the transferrer had, and if they were obtained by him by fraud or theft, no title passes against the lawful owner." See authorities cited in above opinion. *Quigley v. Mexico Southern Bank*, 80 Mo. 289; see also *Stern Bros. v. Germania National Bank*, 34 La. Ann. 1119.

This is the established rule as to overdue commercial paper and the judgment of the circuit court is affirmed. All concur.