JULIAN, *Public Administrator*, v. CALKINS *et al., Appellants.*

1. **Practice in Supreme Court**: EVIDENCE: IMMATERIAL ERROR. Although the testimony of the surviving party to a cause of action was impropery admitted in evidence, yet the Supreme Court will not, for that reason, reverse the judgment where the matters of such testimony were testified to by other witnesses and were not contradicted.

2. **Note Past Due**: TITLE. The transferee of a note past due takes only the title of his transferrer.

3. **Judgment, Assignee of**: NOTE. The assignee of a judgment of allowance in the probate court rendered on a note has the better title and, hence, the legal right to enforce payment as against one

to whom the note was transferred after the rendition of the judg-- ment.

*Appeal from Greene Probate and Common Pleas Court.*—HON. T. H. B. LAWRENCE, Judge.

AFFIRMED.

*Jerre Cravens* and *F. H. Heffernan* for appellants.

(1) The court below decided the case upon the theory that although Daniel Ellis acted in the purchase of the note upon the most reliable information and in the best of faith, yet, because he was the agent of the vendor he could not buy of the latter a doubtful claim, even though both parties knew all the facts relating to the same. This is not the law. *Grayson v. Weddle*, 63 Mo. 524; *Boehlest v. McBride*, 48 Mo. 505; *Kennedy v. Keaping*, 34 Mo. 25; *Mead v. McLauglin*, 42 Mo. 198; *Woodlee v. Burch*, 43 Mo. 201. (2) The court erred in permitting Candace Calkins to testify in the cause. The cause of action in issue and on trial was the validity of the assignment from Walkley, or his mother-in-law, to Wirt W. Ellis, through the intervention of Daniel Ellis, and Wirt W. Ellis being dead, the other party, Candace Calkins, could not testify in her own favor.

*W. C. Price* for respondent.

(1) There is no such proceeding as this in the probate court, that court having no chancery jurisdiction, but statutory powers only. *Friedland v. Wilson*, 18 Mo. 380; *Presbyterian Church v. McElhaney*, 61 Mo. 540. (2) The proceeding is otherwise a nullity. The administrator is bound to pay respondent, being fully protected by the assignment of the order of allowance and assignment. Sections 2762 and 2763, chapter 42, Revised Statutes, 464; *Tutt v. Cowzner*, 50 Mo. 152; *Powers*

*v. Blakey*, 16 Mo. 437. (3) No appeal lies directly from the probate court of Greene county to this court; and this cause must be dismissed for that reason. Section 29, Revised Statutes, chapter 1, article 14, p. 43. (4) The demand was equitably respondent's before assignment on the record by Walkley to her; and whilst it is true, perhaps, if without notice, W. W. Ellis had taken a legal transfer from Walkley, he would have held the legal right to payment as against Calkins, such is not the effect of the blank endorsement of instrument, especially under the circumstances of this case. Daniel Ellis, who negotiated the transaction for his son, colored Wirt W. Ellis' right.

DEARMOND, C.—On September 11, 1870, one H. J. Lindenbower executed to Candace Calkins his negotiable promissory note for $1,000, payable in three months with ten per cent. interest. The note being assigned to S. T. Walkley was allowed by the probate and common pleas court of Greene county, against Lindenbower's estate, and the following minute of such allowance was endorsed upon it: "Allowed for $1,041.70 in the fifth class of demands, this twenty-third day of February, 1871, E. D. Ott, clerk."

Credits were afterwards entered on the back of the note, five hundred dollars in April, 1871, and two hundred and fifty dollars, in August, 1872, and $31.28 in November, 1874. In July or August, 1875, for one hundred and fifty dollars, paid by Wirt. W. Ellis to his wife, Walkley endorsed on the note "pay to the order of ———. S. T. Walkley," and it was sent by mail to Ellis. In August, 1875, after this endorsement of the note Walkley executed a power of attorney to one Joseph Titus, "giving full power to my said attorney to assign said judgment for the benefit of Candace Calkins, who in reality is the owner thereof, as it was only assigned to me for collection." Titus, as attorney in fact, in November, 1875, assigned the judgment of

allowance on the margin .of the record to said Calkins, the assignment being attested by the clerk of said court. In 1879, Wirt W. Ellis died testate, and Daniel Ellis and John P Ellis qualified as his executors. In July, 1881, S. H. Julian having in charge the Lindenbower estate, and having been ordered to pay fifth class .demands in full, filed his petition in said court, calling attention to the rival claims of said Calkins, and Ellis and Ellis, executors, and praying the court that said parties be required to interplead, and that the court direct him as to the payment of the said allowance. The said parties came into court and set up their respective claims.

Upon the hearing the court found "that the claim in controversy, although allowed and .classified in the name of S. T. Walkley in the fifth class of demands, was the property of the said Candace Calkins. That the said claim in the fall of 1874, was placed in the hands of Daniel Ellis, the father of·Wirt W. Ellis, deceased, for collection, with instructions to apply the proceeds when collected to the payment of a deed of trust in favor of Joseph Titus and against said Candace Calkins. That afterwards, to-wit: in July or August, 1875, said Wirt W. Ellis purchased said claim from said Walkley through his father, and while the same was in his (Daniel Ellis') hands for collection with knowledge of the ownership of . Mrs. Calkins, for which he paid to Mrs. S. T. Walkley, the sum of one hundred and fifty dollars." The evidence further shows that Daniel Ellis and Mrs. Walkley negotiated by letter the sale and purchase of the note, Daniel representing Wirt W. That Mrs. Calkins was in Kansas, Mrs. Walkley, in North Missouri, Mr. Walkley, in Illinois, and Daniel and Wirt W. Ellis, father and son, living together in Springfield at the time. That Mrs. Calkins knew nothing of the transaction until after the transfer had been made, and on learning of it was very much dissatisfied ; that Walkley had nothing to do with it except to endorse the note in blank at the request of his wife and Da.. el Ellis.

That Mrs. Walkley and Mrs. Calkins, daughter and mother, used the one hundred and fifty dollars. That just after Mrs. Calkins came from Kansas and joined her daughter in North Missouri, a fresh correspondence began between Mrs. Walkley at one end of the line, and Daniel and Wirt Ellis at the other end, in which Mrs. Walkley charged that the Ellises had swindled her mother; there was no offer on the part of the Walkleys or of Mrs. Calkins to refund the one hundred and fifty dollars, nor was there any from the other side to surrender the note. The evidence does not show misrepresentation on the part of Daniel Ellis in his correspondence with Mrs. Walkley leading up to the purchase of the note for Wirt. Mrs. Calkins was eighty years old at the time of the trial in 1881. The court found that Lindenbower's administrator had $667.64 to pay over on this allowance and directed him to pay to Ellis and Ellis, $201.25, the amount of the one hundred and fifty dollars paid by Wirt Ellis with six per cent interest, and to Mrs. Calkins $466.39, and adjudged that Ellis and Ellis, as executors, should pay two-thirds, and Calkins one-third of the costs of the proceeding. Ellis and Ellis appealed.

I. Ellis and Ellis objected to Mrs. Calkins' competency as a witness, on the authority of *Angell v. Hester*, 64 Mo. 144, and *Ring v. Jamison*, 66 Mo. 429. The objection, I think, should have been sustained. But Mrs. Calkins testified only about her ownership of the note, its assignment to Walkley for collection and that she kept it in her possession until her daughter went to place it in the hands of Daniel Ellis. All this was testified to by other witnesses, and no evidence in the case contradicted it.

II. In fact Walkley was only the agent of Mrs. Calkins, with no real title to the note or authority to transfer it. Hence, as was decided the present term in the carefully considered case of *Ford v. Philips*, 83 Mo. 523, Ellis acquired by the blank endorsement, re-

garding the thing endorsed as a past due note merely, no greater interest or right than Walkley really had. But the note had been allowed as a demand against the Lindenbower estate and the clerk had minuted upon it its allowance and classification as the statute (R. S., sec. 211 ; G. S. 504, sec. 28) requires.   Nor was it so changed by this certificate of the clerk that the rule governing unauthorized transfers by agents, seeming to be owners, of dishonored paper, does not apply.   The allowance of this demand was upon the record of the court, and had, therefore, the force and effect of a judgment.   R. S., sec. 192 ; G. S. 504, sec. 9 ; *McKinney's Adm'r v. Davis*, 6 Mo. 504; *Kennerly v. Shepley*, 15 Mo. 649 ; *Dullard v. Hardy*, 47 Mo. 404.   If the note was not merged in this judgment, and I think it was not in the usual legal acceptation of the term, the judgment certainly was not merged in the clerk's minute on the note.   There was, then, the note with the clerk's certificate of allowance and classification upon it, and the judgment of allowance. The note was under Walkley's hand endorsed in blank and delivered to Ellis.   Afterwards the judgment was regularly assigned to Mrs Calkins.   The special facts aside, which would have the superior legal claim against the Lindenbower estate, Ellis or Calkins ?   Beyond question, a judgment, as against the person or thing within its reach, is superior to the demand upon which it was based.   Mrs. Calkins, then, acquired by the assignment of the judgment to her the legal right to demand payment of the $667.64.

III.   It is not necessary to go into the question as to whether or not the lower court has or had any equity jurisdiction, or to cite former decisions on the point. Ellis and Ellis were not hurt, but benefited, by its assumption of such jurisdiction, and cannot complain that by its judgment they get $201.25, instead of nothing.

IV.   It is urged that Mrs. Calkins, having used a

portion of the one hundrd and fifty dollars, paid by Ellis to Mrs. Walkley, and never having offered to return it, is estopped from asserting any claim to the funds in the hands of Lindenbower's administrator. While a court of equity might require her to refund, it would not in effect do more than was done by the court below.    As assignee of the judgment she has firmer legal footing than the holder of the note.    Under all the evidence I do not find any estoppel in her way.

·V.    Since the instructions asked by Ellis and Ellis and refused. were framed on the theory that the blank endorsement of the note by Walkley transferred to Ellis a higher legal claim than the subsequent assignment of the judgment carried to Mrs. Calkins, 'they require no further notice.    I find no error to warrant a reversal, and having reached this conclusion there is no bitterness in the unbidden thought that our decision may soften the twilight of life for the matron whose years are four score and four.

The judgment should be affirmed.    All concur.