FRANKLIN BANK, Appellant, v. ST. LOUIS CAR COMPANY.—9 S. W. (2d) 901.

Division Two, October 6, 1928.

*Rassieur & Goodwin* for appellant.

*Lehmann & Lehmann* for respondent.

202

DAVIS, C.—This is an action· by an indorsee against the maker to recover on a $10,000 promissory note. Tried to a jury, the verdict was for defendant, plaintiff appealing from the judgment entered thereon.

It is unnecessary to summarize the petition further than to state that it is an ordinary action on a note. The amended answer is a general denial, and a plea that plaintiff did not receive said note before maturity and for value, but after maturity and without adequate consideration and with notice that the note was subject to defenses.

The amended answer further avers that, on September 19, 1919, defendant and one L. S. Skelton executed a contract which involved

the note sued on. The note sued on was exchanged on December 18, 1919, for the original note delivered in accordance with the contract, subject to the terms of a supplementary agreement, as hereinafter set forth, and also subject to the terms of the original contract, which stated that the note was to be paid at the rate of $25 as each automobile was manufactured and delivered, providing that, if the contract was not fully performed by Skelton, nothing was to become due or payable on the note. It was alleged that the contract was not performed by Skelton and nothing ever became due on the note. The other defenses may be summarized by the statements that plaintiff had no title to the note sued on and that set-offs existed, arising out of both a general indebtedness and a judgment indebtedness in favor of defendant against Skelton's estate. The reply was a general denial.

The note sued on reads:

"$10,000.00                                        No. 5529.

St. Louis, Mo., Sept. 20, 1919.

"On demand after date, the undersigned promises to pay to the order of L. S. Skelton, ten thousand dollars, for value received, negotiable and payable without defalcation or discount with interest at the rate of six (6) per cent per annum from date. Payable at the office of the St. Louis Car Company in St. Louis.

"ST. LOUIS CAR COMPANY,

(Signed)   By A. DICKMANN,

Sec'y. & Treas.

"Approved: JOHN I. BEGGS,

President."

Said note was indorsed on the face thereof, as follows:

"Protested for Nonpayment July 31, 1922.

(Signed)   FRED H. SALZMANN,

Notary Public."

Said note was indorsed on the back thereof, as follows:

"L. S. SKELTON,

"W. F. TRAVES,

"THE R. N. COLLINS VEHICLE WOODWORK CO.

"By B. L. CRAIG, Pres."

The testimony warrants the finding that, on or about September 19, 1919, defendant and L. S. Skelton entered into a contract, hereinafter termed auto contract, for the manufacture of automobiles. It provided, in substance, that defendant was to manufacture automobiles for Skelton to be known as the Skelton car. Skelton agreed to pay for such cars as were manufactured and shipped according to schedule prices for labor, material and parts. The auto contract provided for an advancement of $100,000 by Skelton to defendant to

purchase material and parts, for which defendant was to execute what is termed an explanatory demand note, drawing six per cent interest, to be repaid, commencing six months after date, by monthly payments at the rate of not less than $25 per automobile delivered the preceding month.

It may be inferred from the testimony that during the latter part of 1920 and the early part of 1921 Skelton, who, it was assumed, was worth $15,000,000, became financially involved and desired to terminate the auto contract. One W. F. Traves, who had theretofore been in Skelton's employ, approached Skelton, proposing to adjust and settle the auto contract with defendant. Skelton's wife, plaintiff's witness, testified, in substance, that Skelton indorsed the note sued on, turning it over to Traves about ten days prior to his death. He also delivered to Traves other notes of defendant, aggregating $90,000. Traves gave him nothing for the notes. He came to Skelton proposing to dispose of the Skelton Motors Corporation stock, owned by Dr. Skelton, for the purpose of selling the cars and collecting the notes. Traves understood that the notes belonged to Skelton and that anything collected thereon was to be returned to him. Skelton was to execute to Traves a bill of sale and power of attorney to dispose of the stock. Skelton never borrowed money from Traves, and, other than salary due, was never indebted to him. Skelton at this time was extremely worried, because he was in arrears on automobile payments and desired to adjust and liquidate the auto contract.

Prior to, on and after March 22, 1921, B. L. Craig was president of the R. N. Collins Vehicle Woodwork Company located in St. Louis. His deposition was offered by plaintiff, and at the time of its taking, he was superintendent of the auto-body division of the Pullman Company. He was acquainted with Traves, who, immediately prior to the day mentioned, called him to his office, soliciting a loan. On being told by Craig that he did not have money to lend, Craig stated that Traves offered to sell him the note sued on. Traves at this time exhibited stock books and the stock of the Skelton Motors Corporation, a bill of sale of same, and several notes aggregating $100,000. Craig stated that after satisfying himself that Traves owned the notes, on March 22, 1921, he purchased a $10,000 note, paying Traves for it $500 cash and assigning to him accounts against the Premier Motor Corporation aggregating $9489.48. The bill of sale was signed by Skelton, and his signature appeared as indorsee on the note of which he was payee. Craig stated that Traves told him that the notes and the stock were delivered to him by Skelton in partial payment of a $5000 loan to Skelton by Traves. On September 30, 1921, Craig sold the note sued on to plaintiff. He had theretofore related to plaintiff's president the circumstances regard-

ing his acquisition of the note. The plaintiff bank credited the amount of the note in partial payment of a greater amount owing to the bank. On cross-examination Craig said that he knew that defendant was building automobiles for Skelton. Traves wanted more than $1000 for the note, but, on getting down to business, he wanted $1000, Craig finally giving him $500 cash and assigning the account, although he did not deliver the account until later. Craig, or rather the R. N. Collins Vehicle Woodwork Company, owed plaintiff between $30,000 and $40,000, and the note was credited on the account. He stated that Traves did not tell him that he had theretofore demanded payment of defendant, and Craig never demanded payment of the note. Craig held the note from March until September before selling it to plaintiff. He told the president of plaintiff exactly what he paid for the note, also telling him that Traves had a bill of sale for the Skelton Motors Corporation. Plaintiff's president said to him that it was a pretty good deal. Later on, plaintiff wanted him to reduce his account, and in compliance therewith Craig delivered to it the note. Plaintiff's vice-president stated that the note was placed to the credit of R. N. Collins Vehicle Woodwork Company, and was purchased on September 30, 1921. It was a demand note, a little over two years old at the time plaintiff purchased it, and the interest from date had accrued thereon. No interest had ever been paid on the note. Interest on demand notes was paid quarterly or semi-annually at least. The defendant was located in St. Louis, but the bank never inquired of Craig his reason for failing to demand the principal and interest on the note from defendant.

In addition to the auto contract, which we have heretofore referred to, defendant's testimony tends to show the following facts. In pursuance to the auto contract, defendant manufactured a number of automobiles for Skelton, who, just before his death, owed defendant approximately $125,000 for manufacturing automobiles. Traves came to St. Louis with the note in question and other notes, all of which aggregated $100,000, and attempted to trade the notes to defendant in consideration of the cancellation of the auto contract. Traves at that time demanded payment of the notes from defendant, saying suit would be brought if payment was refused. This was before Skelton died. At a later conference Craig said he loaned Traves $500, taking the note sued on as security. The following document was introduced by defendant:

"St. Louis, Missouri, December 18, 1919. "This is to certify that the undersigned, L. S. Skelton, has this day and date received of the St. Louis Car Company of the city of St. Louis, State of Missouri, one promissory note, No. 5529, for ten thousand dollars ($10,000) due in six (6) months from Sep-

tember 20, 1919, with six (6) per cent interest per annum; and that said note is given by the St. Louis Car Company and accepted by L. S. Skelton subject to the terms and conditions of a certain contract made and entered into by the St. Louis Car Company, a Missouri corporation, and L. S. Skelton under date of September 19, 1919, and that said note, or any part thereof, may be paid off according to the terms of the said contract, and any part unpaid at the expiration of six (6) months shall be renewed according to the terms of the contract between the St. Louis Car Company and L. S. Skelton, under date of September 19, 1919. It is further understood that I agree to return immediately original note, dated September 20, for $10,000, in lieu of which note No. 5529 above referred to is issued, and that original note is hereby made void.

(Signed)    L. S. Skelton.''

During a conference with defendant's representatives, Traves stated that the entire Skelton Motors Corporation, including the notes, were turned over to him to straighten affairs. A witness stated that Craig came to his office and said that he had loaned Traves $500, taking the note sued on as credit, and asking the witness whether he did right. There was nothing said about assigning an account. Defendant offered in evidence a certified copy of a petition and judgment in an Oklahoma action brought by defendant against the estate of Skelton. The court stated that it was admitted only for the purpose of showing the amount defendant claimed the estate owed him by virtue of the auto contract. The petition, comprising four counts or causes of action, shows that the claim of defendant against Skelton's estate aggregated $1,382,791.99. However, the Oklahoma court rendered judgment for $290,000 in favor of defendant against said estate. In addition to the judgment, Skelton's executors returned to defendant two of the notes aggregating $90,000. They were companion notes to the note sued on and came from the Probate Court of Kansas City, Missouri. Late in 1920 and early in 1921, the Premier Motor Corporation was insolvent and was being refinanced, which Craig was aware of, as he was chairman of the creditors' committee. It was at this time that he assigned the Premier account, aggregating more than $9000, to Traves. Another witness said that Craig said he loaned Traves $500 on a $10,000 note. On July 29, 1922, by a letter dated the day previous, plaintiff demanded payment of the note sued on, and this was the first information that defendant had that plaintiff was in possession of said note. Craig never demanded payment of the note, nor did plaintiff until the letter of July 28, 1922. No interest was ever paid on the note sued on. Such further facts as are pertinent, if any, will appear in the opinion.

I. Plaintiff takes the position that, upon the pleadings and the evidence, it was entitled to a directed verdict. The record advises that the cause was tried to a jury, the parties seemingly consenting to the procedure. Plaintiff now assumes the position that this is a suit in equity, but we think the pleadings and the evidence determine it an action at law. Consequently, as the jury found for defendant, its determination controls on issues of fact, which determination we must accept if such facts tend to support the verdict.

II. The promissory note sued on was dated September 20, 1919. The evidence tends to show, we think, that it was on that day delivered to Skelton in compliance with the contract of September 19, 1919. The supplemental agreement of December 18, 1919, contemplated that it was to be exchanged for a new note for the same amount to run for six months from September 20, 1919, but it is evident that Skelton failed to make the exchange and that the note sued on was the original note. On March 22, 1921, the note was indorsed and delivered to B. L. Craig, either as an individual or as president of the R. N. Collins Vehicle Woodwork Company, by W. F. Traves, to whom L. S. Skelton, the payee, had delivered it in the latter part of 1920 or the early part of 1921, after indorsing it. The evidence tends to show that Skelton retained title to the note, entrusting it to Traves for the purpose of making an adjustment and settlement of the auto contract for him with defendant. On September 30, 1921, the R. N. Collins Vehicle Woodwork Company, by B. L. Craig, president, sold and indorsed the note to plaintiff. By its letter of July 28, 1922, plaintiff demanded payment of the note. No interest on the note was ever demanded or paid.

For the purpose of transfer, it is the general rule of law that a promissory note is not overdue, so as to make a transferee a purchaser after maturity, until after the lapse of a reasonable time, it then becoming overdue and non-negotiable. The duration of a reasonable time depends on the facts and circumstances of each case, involving the form of the note, local customs or usage, the locality of the parties, the payment of interest and other things. Our Negotiable Instrument Act holds that, where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course. [R. S. 1919, sec. 839.] The question of what is an unreasonable length of time with respect to a demand note is a mixed question of law and fact. Whether the circumstances show an unreasonable length of time is a question of fact to be found by the jury. Whether, if true, such circumstances

amount to an unreasonable length of time is a question of law to be determined by the court. [8 C. J. 1070.] We are not called upon to determine as a matter of law whether or not a demand was made within a reasonable time. That question was determined by the jury under the instructions, and by their verdict they found that a reasonable time had elapsed, thus finding that plaintiff was not a holder in due course. Moreover, in discussing Instruction 2, the plaintiff states, "The Franklin Bank did not claim to be a holder in due course." That the question was properly submitted to the jury, we have no doubt. At the time Craig purchased the note for himself or his company, it showed that interest had not been paid on it. This was a year and a half after the date of its issuance. Moreover, the note is in usual and ordinary form. Plaintiff's evidence shows that it was customary to collect interest on demand notes quarterly or semi-annually, a demand for which could easily have been made here. The verdict of the jury in that regard will not be disturbed.

III. The evidence tending to develop and the jury by its verdict having found that plaintiff was not a holder of the note in due course, the immediate inquiry involves the title of plaintiff to the note.

We think it is evident that the burden of proof was on plaintiff to show title in itself to the note before it could recover thereon. The doctrine is both fundamental and elemental. It is true that possession of the note by plaintiff and the blank indorsements thereon tended to show title in plaintiff, making a prima-facie case. Nevertheless the burden rested on plaintiff to the end. However, plaintiff's evidence through the wife of Skelton, the payee of the note, tended to rebut the prima-facie case made. She stated it was L. S. Skelton's signature that appeared on the back of the note, although she did not see him sign it, but she saw him turn it over to Traves; however, the purpose of so doing was to collect the notes, and it was with the understanding that the notes remained the property of Skelton, and that collections made thereon were to be turned over to him. That the note sued on remained Skelton's property is fortified by the fact that two other notes for $60,000 and $30,000, respectively, delivered by Skelton to Traves on that occasion, were later given up to Skelton's administrators by Traves. Defendant's evidence tended to show that Traves said he was given possession of the notes to straighten out Skelton's affairs with defendant; that Traves was sent by Skelton to St. Louis to negotiate a cancellation of the auto contract, offering to return the three notes, aggregating $100,000, if defendant would release Skelton from the contract.

The preceding evidence tended to show that Traves never had title or any direct interest in the notes, but that he was in charge of them merely for collection and negotiation for cancellation of the auto contract. In violation of his trust, he converted the note sued on to his own use. If the evidence adduced is to be believed, Traves was an embezzler, and, as the note, as the jury found, was past due at its negotiation, it had become non-negotiable. Therefore Traves could not pass legal title to it and plaintiff had none. Ford v. Phillips, 83 Mo. 523, supports our conclusions. The case rules that, with respect to notes transferred after maturity, the holder takes no better title than the transferrer had. We think it advisable to quote from the opinion at length, 1. c. 529, 530:

"It is well established that at the time Benson hypothecated the note to White, he had no knowledge that Benson was the mere agent of Mrs. Ford, but believed he was the genuine owner thereof. But, it is insisted by the respondent that this note being past due, the purchaser, White, took nothing but the actual right and title of the vendor, Benson, and subject to all rights attaching to the note itself. [Barnes v. McMullin, 78 Mo. 260; Cutler v. Cook, 77 Mo. 388; Emerson v. Crocker, 5 N. H. 159; Wheeler v. Barrett, 20 Mo. 573.] It is laid down as a rule in Daniels on Negotiable Instruments, secs. 724, 724a, that 'negotiable paper, whether made for accommodation or otherwise, may be transferred by indorsement or by delivery (as the case may be) either before it has fallen due or afterwards. . . . But there is this vital distinction between the rights of a transferee who received the paper before, and of one who received it after maturity. The transferee of negotiable paper to whom it is transferred after maturity, acquires nothing but the actual right and title of the transferrer; and the like rule applies to the transferee who takes the paper after the refusal to accept by the drawee, provided he had notice of such refusal.' In Emerson v. Crocker, 5 N. H. 159, it is held that the rule: 'Whenever one of two innocent persons must suffer by the act of a third, he who has enabled such third person to occasion the loss, must sustain it, . . . holds only in cases of innocent holders, into whose hands the note came in the regular course of business, before it became payable. If the note be overdue at the time the agent so transfers it, the person who takes it must stand in the situation of the agent.' The same doctrine is maintained in Wheeler v. Barrett, 20 Mo. 573. In Story on Promissory Notes (5 Ed.) sec. 178, it is said: 'If the transfer is after the maturity of the note, the holder takes it as a dishonored note, and is affected by all the equities between the original parties, whether he has any notice thereof or not.' The equities between the parties are only such as attach to the particular note. And it is said (Sec-

tion 178, supra) : 'The true test to determine whether a note is subject to an equity, set up by the maker is this: Could the payee at the time he transferred the note, have maintained a suit upon it against the maker, if it had then been mature.' The same doctrine is held in Livermore v. Blood, 40 Mo. 48; Foley v. Smith, 6 Wall. 492; Vermilye v. Adams Ex. Co., 21 Wall. 138; McKim v. King, 58 Md. 502." [See also Julian v. Calkins, 85 Mo. 202.]

IV. We think it unnecessary to discuss the applicability of the set-off of the judgment obtained by defendant against Skelton's estate, for the question in its relation to plaintiff's title to the note is not relevant. Plaintiff may recover on the note only upon the strength of its own title, and, as the force of its own evidence develops that it had no title, the merger of the note in the judgment is aside the question here involved. Moreover, the court eliminated it as a defense, theretofore permitting its introduction in evidence merely to show the amount of defendant's claim.

V. Plaintiff charges the court erred in giving an instruction for defendant, reading: "If the jury find and believe from the evidence that one L. S. Skelton, mentioned in the evidence, violated his contract with the St. Louis Car Company and did not take and receive automobiles as agreed to by him in said contract, then under the terms of said contract defendant never became obligated to pay L. S. Skelton the note in question in this case, and if the jury so find, they must find a verdict for defendant unless they find, as defined in other instructions, that Traves, or Craig, or the R. N. Collins Vehicle Woodwork Company or the plaintiff, was a holder of the note in question in due course."

Plaintiff's objections to the instruction are that the contract did not contain such a provision as the instruction refers to with respect to any note; that the contract does not refer to the note sued on; that an oral agreement rendering the note sued on non-payable in any event was not pleaded or proven; and if so, that such oral agreement would have been of no force or effect.

The contract is somewhat lengthy, covering eighteen pages of the printed abstract. It provided for the manufacture by defendant for Skelton of between twelve and fifteen thousand automobiles during a three-year period, which Skelton agreed to accept and pay for. It also provided for a loan or advancement by Skelton to defendant of $100,000, to purchase materials and parts, which were to remain Skelton's property up to the value of an unpaid balance. The $100,000 advancement was to be evidenced by a duly executed explanatory demand note, to be repaid at the rate of not less than $25 per automobile for each automobile delivered during the preceding

month, commencing six months after the date of the execution of the contract. The evidence tends to show that Skelton owed defendant approximately $125,000 for automobiles manufactured and delivered, and that shortly after Skelton entrusted the notes to Traves and before Traves sold the note sued on to Craig, Skelton died. It may be inferred that Skelton failed to adhere to the provisions of the contract, breaching same. The notes for $60,000 and $30,000, respectively, companion notes to the one sued on, were returned to defendant by Skelton's estate.

Plaintiff contends that the contract, relative to any note, did not contain such a provision as is referred to by the instruction. We think the evidence shows that the note sued on was given Skelton by defendant in compliance with its agreement as to the loan or advancement of $100,000 to buy materials. This note may be designated as an original note. The supplementary agreement of December 18, 1919, advises that it was contemplated exchanging this note for one of like amount due in six months. No exchange was made.

The question arises then, could Skelton for failure to exchange the note, as he agreed, take advantage of his failure and recover against defendant on this note? If he could not do so, then evidently plaintiff could not, because, as assignor of the note, its rights did not exceed the rights of Skelton. The supplementary agreement of December 18, 1919, ties the note into the contract of September 19, 1919, as defendant contends, for the memorandum expressly stated that Skelton accepted it subject to the terms and conditions of the contract of September 19, 1919. It follows that plaintiff, in taking the note, took it subject to all defenses defendant had against Skelton. This ruling disposes of the other contentions made by plaintiff with respect to the instruction. We do not think the instruction erroneous on the grounds urged.

VI. Plaintiff contends the court erred in refusing its instruction, reading: "The court instructs the jury that defendant has no defense to the suit (note) sued upon except that Traves had no title thereto, and that R. N. Collins Vehicle Woodwork Company had no title, and that plaintiff took said note with actual knowledge thereof or with knowledge of such facts that its action in taking it amounted to bad faith, all as mentioned in other instructions." We need not discuss the instruction further than to say it does not include the defense that plaintiff had no title to the note. Had it been given, it would have confused the jury. The court did not err in refusing it.

The judgment is affirmed. *Higbee* and *Henwood, CC.*, concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.